## THE HYGRADE NO. 12.

### THE CELTIC.

#### TANKER HYGRADE NO. 12, Inc., v. AMERICAN PIPE & CONSTRUCTION CO. et al.

#### CELTIC TOW BOAT CO., Inc., v. SAME.

District Court, S. D. New York.

June 19, 1940.

Foley & Martin, of New York City (John R. Stewart and Christopher E. Heckman, both of New York City, of counsel), for libellant.

Wait, Wilson & Newton, of New York City, for respondent.

GALSTON, District Judge.

Dredge No. 1, owned and operated by the respondent, American Pipe & Construction Company, was engaged, prior to October 15, 1935, in excavating in the New York State Barge Canal over an area beginning at Lock 16 to a point some distance to the eastward, and is alleged while so doing to have dislodged and raised a boulder from the bed of the canal and to have left the boulder lying in the navigable waters of the canal.

On the morning of that day the tank barge, Hygrade No. 12, loaded with gasoline and pushed by the tug Celtic which had her in tow, while proceeding in the canal at a distance somewhat easterly of the gate, struck the boulder, as did the tug also, and both barge and tug were damaged.

The draft of the barge was about 9 feet in the bow and 10 feet in the stern, and that of the tug about 8 feet at the bow and 10 feet at the stern. The tow approached Lock 16 going in a westerly direction, and blew three whistles for the lock, a request to the lock tender to open the lock. They were then about half a mile away. At that time the tow was near the center of the canal and proceeding at full speed. At the time the signal light at the lock showed red, indicating that the lock was not available. Shortly after the signal was blown, the master of the Celtic saw a tow lying on the lower wall, on the south bank. The Celtic accordingly slowed down to steerage way, and just at that time the barge hit an obstruction in the canal. The Celtic's engines were stopped and backed up. Meanwhile the bow of the barge was lifted in the air and apparently passed over the obstruction, rolling back and forth as the master described it. Immediately thereafter the Celtic hit the obstruction and passed slowly over it. The captain places the point at which the barge came into contact with the obstruction somewhat to the southward of the center line of the canal and about 1500 feet from the easterly end of the lock wall. The canal in that vicinity is about 250 feet in width.

The respondent had commenced excavating on September 28, 1935 in the canal east of Lock No. 16, in the performance of its contract with the State of New York, Department of Public Works, Barge Canal Improvement. The excavating operations were to be carried on to a width of 25 feet and to a depth of from 2 to 3 feet. The dredge had worked on the south side of the canal and up to October 15 had completed two full cuts, each 2250 feet in length, and had dredged 150 feet of the third cut.

It appears that it is customary during the time of making these cuts to use a sweep in order to find out whether there is any shoulder or berm, so that there shall be no obstruction to navigation.

The north edge of the second cut was about 57 feet from the center line of the canal. The superintendent of the respondent testified that their instructions were to drag the ridge or berm, and that after a section was completed they went back and swept over it. Westcott said that the berm

was dragged with a dipper of the dredge "to knock anything back in the cut". Then the area was to be dragged with a sweeper to take up anything that the dipper had missed. At the time of the happening of the accident it appeared that the respondent had no sweeper and it was only afterwards that one was used.

The contract of the respondent with the State of New York contained provisions that the canal would be open to navigation during the progress of the work; that the work was to be performed with as little interference as possible with the navigation of boats; and that the contractor was subject to the provisions of Sec. 182 of the Canal Law relating to obstruction of navigation.

It seems clear that the device which was used by the respondent before obtaining a regulation sweep was not effective in locating this boulder; hence if the boulder rolled down the side of the berm beyond the length of the bucket arm, it is readily understood why the bucket which was used in sweeping the berm did not reveal the presence of the boulder. The success of the state engineer within ten minutes of his operation in locating this boulder by employing a regulation sweep, suggests that the means employed by the respondent prior to the accident were not sufficient for the purpose.

The sweep used by the State of New York was a section of an iron rod weighing 25 to 30 pounds to the yard, 4 inches high, 25 or 30 feet in length and an inch and a half or an inch and three quarters in width. The respondent had used a pipe about 2 inches in diameter and 18 to 20 feet in length, suspended by two pieces of sash cord one-eighth to one-quarter of an inch in diameter, from a motor-boat. This contrivance could not have been very effective for with two attempts it failed to locate the boulder. Apparently the respondent relied on the swinging bucket to level the ridge or berm. Obviously a hidden obstruction beyond the reach of the bucket would remain undisturbed by the means which the respondent employed.

The stone was found 40 feet south of the center line of the canal. The north line of respondent's second cut was 57 feet south of the center line. Accordingly the stone was 17 feet north of the projection of the north side of the second cut. The width of the dredge was 38 or 40 feet and testimony showed that the port side of the dredge would extend some distance over the north side of the cut, approximately 13 feet, so that the boulder was about 4 feet from the side of the dredge. The assistant superintendent of the respondent admitted that the bucket of the dredge on an angle would not extend more than 3 feet, so that in the distances recited the bucket did not extend to where the stone was found.

Since the boulder projected about 3½ feet above the channel bottom, which at that point was 12 feet below the surface of the water, it must be concluded that it was in the path of navigation. The probability is that it had been uncovered by the respondent's dredging operation; such, at any rate, was the admission of Brown, one of the engineers employed by the State of New York.

The libellants may have decrees in accordance with the foregoing opinion. Submit findings of fact and conclusions of law in conformity with the foregoing opinion.