## GULF OIL CORPORATION v. THE BALTIMORE et al.

### No. 15777.

District Court, E. D. New York.

Aug. 10, 1942.

Burlingham, Veeder, Clark & Hupper, of New York City (A. Howard Neely and Frederic Conger, both of New York City, of counsel), for libellant.

Foley & Martin, of New York City (Christopher E. Heckman and John R. Stewart, both of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This is a suit against the Dredge Baltimore in rem, and the Arundel Corporation in personam, to recover damages sustained May 29th, 1937, by libellant's motor vessel Supreme striking an obstruction, a large boulder, in the New York State Barge Canal a short distance east of Bridge E-57, near Rome, New York, which the libellant contends was dislodged or uncovered during dredging operations by respondent, and that it was negligently left lying on the bottom of the canal in the channel.

Under a contract between the State of New York and the respondent, the Arundel Corporation, made in August 1935, that corporation agreed to deepen to a minimum depth of 14 feet below normal pool level, and widen from 75 to 104 feet the State Barge Canal from Guard Gate No. 7 at Rome, to Lock No. 21 at New London, which included the place where such boulder was found. The additional width of 29 feet was to be created by excavating only from the north side of the canal. The

work was supposed to commence September 1st, 1935. Respondent, the Arundel Corporation, agreed to remove and dispose of, among other things mentioned, boulders, and was to receive a sum in addition to the contract price per cubic yard, for removing boulders exceeding 1 cubic yard each.

That contract contained the following provision: "barge canal will be open to navigation during the progress of the work"; and, it also provided that respondent was to be subject to the provisions of Section 182 of the Canal Law, Consol. Laws, c. 5, which made it unlawful to obstruct the navigation of the canal; and, that respondent should be responsible for all damages, of whatsoever nature, resulting from the work, from any cause whatsoever; that the area to be excavated should be divided into four sections, commencing at Lock No. 21 and ending at Guard Gate No. 7. Section No. 3, with which we are concerned, consisted of station 6320 to station 6425, and it was at station 6418+85 that the said boulder was found.

Respondent employed its hydraulic Dredge Lyons, and its dipper Dredge Baltimore in connection with its work under said contract, the Lyons having dredged the section here involved in February, March and April 1936.

As shown by the progress map, the Baltimore, in May 1937, dredged a 30 foot cut on the north side of the canal, close to where the said obstruction, boulder, was found, having between May 18th and May 21st, both inclusive, dredged between stations 6416+57 and 6422+26; and on May 22nd having been loosening up the slope and cleaning up the north bottom angle between station 6413+85 and station 6422+20.

The libellant's motor vessel Supreme, on May 27th, 1937, was loaded with 7,500 gallons of gasoline at Rensselaer to be transported to Syracuse. The inside of all tanks of the Supreme were examined before loading, and disclosed no leaks, indentations, or other damage to her bottom plates. On leaving Rensselaer the draft of the Supreme was 9 feet 8 inches forward and aft.

She proceeded without incident, until the early afternoon of May 29th, 1937, when, as she was approaching Stony Creek Bridge (E-57), making about 3 or 4 knots an hour, her bow was observed to rise up out of the water, and a loud scraping noise was heard on board the Supreme, indicating that she had hit a hard obstruction. Her engine was immediately stopped, but she bumped along over the obstruction from her starboard bow to No. 6 tank, when she slid off. As a result of her striking the Supreme was caused to sheer toward the north bank, and her rudder and engine were maneuvered to straighten her up in the canal; and she thereafter proceeded on, and her captain, on her arrival at Lock No. 21, reported the obstruction to the lock tender. In the meantime, it was observed, that the Supreme had sprung leaks on her starboard side.

After the discharge of the Supreme's cargo at Syracuse, she was examined for damage, and it was found that the plates along her bottom in tanks 1 to 5 inclusive, were set up, and indented about 5 feet in from the starboard side. This damage did not exist when the Supreme was examined before loading at Rensselaer, and she did not suffer any such damage while proceeding, and had no accident, by which such damage might have been caused.

On May 30th, 1937, a representative of the Department of Public Works, and two of respondent's representatives swept the area where the obstruction was reported, and found two especially high spots, one of which proved to be a partially embedded boulder, about 6x6x4 feet in size, located at station 6418+85, the other a berm at station 6421. There was 9 feet 9 inches of water over the boulder and 10 feet on the berm. On May 31st, 1937, the Dredge Baltimore removed the boulder, and levelled off the berm.

While the Supreme, on leaving Rensselaer, was drawing 9 feet 8 inches at bow and stern, she had probably, by her consumption of fuel oil, reduced it to 9 feet 6 inches, but as she had a squat of about 15 inches, she was probably drawing about 10 feet 9 inches at the time of the accident, and there was not sufficient water over the obstruction for the Supreme to navigate, without striking it.

That there was an obstruction to wit; a boulder, partly imbedded in the bottom of the portion of the canal, described on the progress map, as station 6418+85, was established beyond question, as was also the fact that the Supreme struck her bottom on the starboard side forward on said obstruction, the boulder, and received substantial damage.

This occurred about 1.35 o'clock p. m. on May 29th, 1937.

■ While, of course, the burden of proof rests upon the libellant to make out a case, that, it has done, by showing the contractual relations of the respondent with the State of New York. The Arundel Corporation's duty, to keep the canal open for navigation during the execution of the contract, the existence of the obstruction of which the libellant and the Supreme did not have notice, the fact that the Dredge Baltimore was working in the immediate vicinity before the happening in question, the failure to sweep after the conclusion of the Baltimore's dredging in that immediate vicinity, the striking of the Supreme on that obstruction, and the damage she received.

The duty to go forward and explain cause of the existence of the obstruction rests upon the respondent. Huntley v. Empire Engineering Corporation, 2 Cir., 211 F. 959; Federal Motorship Corporation v. Arundel Corporation, 1941 A.M.C. 994, affirmed without opinion May 6th, 1942 by the Appellate Division, Fourth Department, 264 App.Div. 823, 35 N.Y.S.2d 468.

Respondent attempted to show that the boulder had come where it was by falling of earth and rocks from the side of the canal, but that contention was not sustained. The fact that the particular obstruction in question was not found in the sweepings of the bottom made by the State canal officer, or employees, does not prove to me that the obstruction was nonexistent at those times, but rather, that it was covered.

■ Neither does the fact, that the Baltimore did not dredge exactly at the spot where the obstruction was found, relieve the respondent, or the Dredge Baltimore.

The hydraulic Dredge Lyons had excavated, in the Section, at an earlier period.

The Baltimore's dipper operated about 13 to 15 feet from the obstruction, and the disturbance of the bottom in the immediate vicinity could well, in addition to the earlier dredging of the Lyons and the Baltimore, have caused such a movement thereof, as to uncover the boulder, sufficiently to leave it 2 feet 9 inches above the bottom and a menace to boats drawing much over 9 feet.

■ In any event, the dredging was being done by respondent under contract, and the dredging in the Section in which such obstruction was completed on May 21st, 1937 by the Baltimore, and the respondent; and its dredge and the respondent were negligent in failing to sweep the bottom, and ascertain the existence of the obstruction in question.

■ As the canal was to be kept open for navigation, during the performance of the contract, it was the duty of the Dredge Baltimore to have swept the area completed on May 21st, 1937, and not have waited until the whole contract was completed, some months later. Tanker Hygrade No. 12, Inc., v. American Pipe & Construction Co. et al., D.C., 33 F.Supp. 652; affirmed without opinion 2 Cir., 120 F.2d 1011.

There is a sharp conflict in the evidence, as to the position of the Supreme in the canal, at the time when she struck the obstruction, but, I am convinced that she was only slightly to the north side of the center line of the canal, where there should have been sufficient water for her, drawing 10 feet 9 inches, to navigate in safety. In fact, there was 9 feet 9 inches of water over the boulder, and 12 feet 8 inches of water around the boulder, thus making the boulder protrude 2 feet 9 inches above the bottom of the canal.

■ Respondent also contends, that the Supreme should have followed the alleged usual custom of navigating on the south side of the former center of the canal where there was better water.

While it probably was true, that better water had formerly been found on the south side of the canal, that formed the reason for the making of the contract for the dredging in question, which, at the place in question, had been completed on May 21st, 1937, it is hard for me to understand why the State would have spent over a million dollars to deepen the canal to the north, sufficiently to allow its use there for boats of much deeper draft than the Supreme, if it would not be safe to use it.

The Supreme would have been safely navigated at the place in question, but for the uncharted and unknown obstruction, the boulder, in question.

The respondent, the Arundel Corporation, and its Dredge Baltimore, are solely at fault and to blame.

The libellant and its motor vessel Supreme, are without fault or blame.

A decree, in the usual form, should be entered in favor of the libellant against the respondent the Arundel Corporation and its Dredge Baltimore, with costs.