ARUNDEL CORPORATION, Respondent, *v.* FEDERAL INSURANCE COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, July 6, 1950.

*Martin P. Detels* for appellant.

*Christopher E. Heckman* for respondent.

HOFSTADTER, J.   The action is upon an insurance policy to cover the plaintiff's liability for property damage, personal injuries or death in carrying out a contract with the State of New York to widen and deepen a portion of the State Barge Canal near Rome, N. Y.   The facts were stipulated and the only question is whether on the facts so stipulated the grounding of a barge, *Seaboard #44*, was covered by the policy.

The plaintiff's contract with the State obligated it to widen and deepen the existing twelve foot deep, seventy-five foot wide channel to a depth of fourteen feet and a width of 104 feet, by cutting away the existing north bank and by lowering the bottom of the existing channel to attain the required depth and width.   The plaintiff was to keep the canal open for navigation during the progress of the work, which was near Rome and included an area between points known as Station 6447 and Station 6452, numbered consecutively, each 100 feet apart.

The defendant's policy was issued as of November 20, 1937, and insured the plaintiff for $100,000 for the period from November 20, 1937, to November 20, 1938, as follows:

" To cover only the Assured's Legal and/or Contract Liability for loss or damage to the property of others   *   *   * occurring while this policy is in force, caused by failure to raise and/or remove obstructions or spoil in connection with their operations of drilling, blasting or. dredging in   *   *   *   the New York State Barge Canal   *   *   *.

" And in case the Liability of the assured has been contested with the consent in writing of a majority of the underwriters (in amount) we will also pay a like proportion of the. costs thereby incurred or paid."

Prior to May 14, 1938, the plaintiff's dredge " Baltimore " had dredged the area between Stations 6447 and 6452 but on account of hard material between these stations was able to excavate to an average depth of only ten feet below normal pool level in this area. At Station 6448 near which the dredge was operating and the grounding of the barge occurred, the depths of water below normal pool level were: thirty-five feet and forty feet north of a theoretical centerline fourteen feet; fifty feet north of this line 11.5 feet; 60 feet north of this line ten feet, and seventy feet north of this line eight feet.

On May 14, 1938, at about 9:45 P.M. the barge *Seaboard #44*, in charge of the tug *John Nichols,* was passing through the canal westerly near the point at which the plaintiff's dredge was stationed. The dredge was near the center of the channel. After the exchange of proper signals with the dredge, the tug and barge proceeded slowly and passed on the north side of the dredge, and as the barge came even with the bow of the dredge it scraped bottom, going hard aground.

Thereafter the owner of the *Seaboard #44* sued the tug *John Nichols* in admiralty, and the owner of the *John Nichols* in turn impleaded the present plaintiff in that suit, charging it with negligence in signaling the tug to proceed, in not shifting the dredge and in not warning those on the tug of the depth of the water alongside the tug. The plaintiff compromised this admiralty suit by a payment of $1,750 and incurred attorney's fees and disbursements of $1,216.77. The reasonableness of the payments so made by the plaintiff, totaling $2,966.77, is not questioned by the defendant. The single question to be decided is: Was the damage to the barge " caused by failure to raise and/or remove obstructions or spoil " in connection with the plaintiff's operations of dredging the Barge Canal, or, differently stated, was the claim asserted against the plaintiff one of liability for damage so caused?

The defendant resists liability on two grounds: (1) the claim made against the plaintiff by the tug owner was not for failure to remove an obstruction, but for other negligence, and (2) the grounding was not in fact caused by a failure to remove an obstruction nor was the object which the barge struck an obstruction.

While at first blush the case appears a close one, further study satisfies us that the liability incurred by the plaintiff as the result of the grounding of the barge was clearly within the policy coverage.

It is, of course, correct that the tug owner's petition did not charge the plaintiff with failure to remove an obstruction, but with signaling that it was safe for the tug to proceed, not shifting the dredge and not warning of the shallowness of the water. But, in my opinion the defendant's liability on its policy springs from the fact of damage caused by the presence of an obstruction not removed in the course of the plaintiff's operations, not from the theory on which liability was sought to be fastened on the plaintiff by the tug owner. The defendant insured the plaintiff against liability for the occurrence itself, not against liability on any specified ground. Therefore, the pleadings in the admiralty suit on which the defendant so largely relies, are not determinative of the issue here (*Marine Tr. Corp.* v. *Northwestern Fire & Marine Ins. Co.*, 67 F. 2d 544; *Bee Line Transp. Co.* v. *Connecticut Fire Ins. Co.*, 76 F. 2d 759). We are wholly in accord with the view on this question so clearly and forcibly expressed by the trial court in its opinion.

The more difficult question is whether what the barge struck when she ran aground was an obstruction which the plaintiff had failed to raise or remove. The record does not show specifically what the barge struck when she ran aground; all the stipulation shows is that she " scraped bottom going hard aground." But if the bottom in the admitted circumstances can reasonably be held to be an obstruction, it is clear that it was there at the time because the plaintiff had not in its dredging operations removed it. The defendant argues that there could be no failure to remove obstructions or spoil until the plaintiff was given an opportunity to finish its dredging at a particular place. I think this gives the policy too narrow a reading and fails to take into account *the plaintiff's continuing obligation to keep the canal open for navigation during the progress of its work.* The meeting of this obligation entailed some risk and the insurance was obtained to protect the plaintiff against that risk.

Let it be borne in mind that the policy speaks of failure to remove " in connection " with drilling, blasting or dredging operations, not after the completion of such operations, either in their entirety or, as argued by the defendant, at a particular place. According to the construction so advocated by the defendant, there could be no failure to remove until the completion of dredging at a particular place. Such a construction would be fruitful of controversy, for who is to define a " particular place " or to say when dredging at it has been finished? In my opinion, the expression " in connection with " is too broad to be whittled away in that fashion. Bearing in mind the plain-

tiff's constant duty to keep the canal open for navigation, it needed insurance against damage to a passing barge through running aground, whether the grounding occurred during actual dredging operations at a specified location or thereafter. For this reason I cannot subscribe to the limited scope the defendant tries to give to the term "failure".

The stipulation recites that this defendant paid the plaintiff its loss sustained as a result of the liability imposed on it by the decision in *Gulf Oil Corp.* v. *The Baltimore* (47 F. Supp. 770) under the same form of policy as the one now before us. While, of course, neither that decision nor the payment so made by the defendant concludes it in this action, it is nevertheless significant that in the *Gulf Oil* case the United States District Court does lay down the rule that under the very contract between the plaintiff here and the State it was the plaintiff's duty to keep the area clear as the work went along and that it could not wait until the completion of the contract.

This is, I think, a sound view, which gives effect to the obligation to keep the canal open at all times. If this was the plaintiff's obligation and, as must be recognized, carrying it out exposed shipping to the danger of running aground, the insurance would be useless unless it covered the risk of damage to a barge under such circumstances, I believe, therefore, that there was a failure to remove "in connection with" the plaintiff's operations, within the terms of the policy. The elementary rule of construction for insurance policies, in my opinion compels this construction of the expression "failure to raise and/or remove * * * in connection with their operations."

Another reason for this interpretation of the policy is that its effective period covered that of the plaintiff's work under its contract with the State and the damage, liability for which was insured against, would have to be caused during the effective period of the policy. Hence, it may fairly be inferred that the insurance contemplated damage during the course rather than after the completion of operations.

The record does not seem explicitly to bear out the statement made in the plaintiff's brief that the dredge *Baltimore* had prior to May 14, left the particular location and had returned on May 14, 1938, to resume operations there. If, however, that is the fact, then we would have a failure to remove even in the narrower sense for which the defendant argues.

To determine whether the protruding bottom of the canal, responsible for the grounding of the barge — I assume, as urged by the appellant, that is all it was — was an obstruction, we

must again resort to the policy and its purpose, rather than dictionary definitions of the word. It may, however, not be amiss to note that the word has been applied to the bed of a body of water, as in a situation where something in the bed creates a foul berth for a ship (*Waldie* v. *Steers Sand & Gravel Corp.*, 151 F. 2d 129). Etymologically, the word is at least susceptible of the meaning advanced by the plaintiff to sustain recovery.

When we consider that the policy was to cover the specified risks incurred in connection with the plaintiff's dredging operation, I see no escape from the conclusion that the bed on which the barge *Seaboard #44* ran aground was an obstruction. The presence of the high bed was a hazard to navigation — it became so because of the plaintiff's failure, in the course of its operations, to remove it. Hence it was an obstruction.

If the defendant wished to cut down the coverage, it should have expressed its purpose in clear and direct language. The language used is capable of the meaning here given to it, and that meaning effectuates the purpose for which the insurance was obtained.

The judgment should be affirmed, with costs.

PECORA, J. (dissenting). The policy insured for damages '' caused by failure to raise and/or remove obstructions or spoil '' in connection with plaintiff's dredging operations. The court below found that when the barge (pushed by the tug) attempted to pass by plaintiff's dredge, the barge '' struck a rock which had not yet been removed.'' There is absolutely no evidence in the record to support the finding that the barge '' struck a rock ''.

The evidence is that the barge '' grounded '' while attempting to pass plaintiff's dredge. In the report of the Division of Canals and Waterways of the Department of Public Works on the grounding of the barge it is stated: '' The barge ' Seaboard No. 44 ' and the tug ' John Nichols ' traveling slowly, were passing on the north side of the dredge, and as the barge came even with the bow of the dredge it scraped bottom going hard aground when the pool level was dropped about five inches due to the surge in the drawing of the water at Lock #21 for locking purposes.''

Plaintiff-respondent argues that the barge failed to find sufficient depth to accommodate her because '' plaintiff's dredge crew had failed to do their work by removing everything which constituted an obstruction to the passage of the barge through such water.'' However, the difficulty with this argument is

that the record does not support it and that it is predicated solely upon conjecture. In fact, plaintiff's contention is based on the assumption that the barge struck some " high spot " on the bottom which plaintiff had failed to remove. If that were the proven fact then clearly defendant would be liable. But all that the record evidence demonstrates is that the barge went hard aground, that it struck bottom. That evidence is not sufficient to sustain plaintiff's burden of proof to such extent that the accident resulted from failure to remove an " obstruction ". Merely to prove that the barge went " aground " is not to prove that it went aground upon an " obstruction " which plaintiff failed to remove.

The learned trial court's reference to unremoved " rocks " can find no support anywhere in the record.

I think that the judgment below should be reversed and a new trial granted, with costs to appellant to abide the event, to give the plaintiff an opportunity to prove that the barge went aground because of an " obstruction " which plaintiff failed to remove, if such proof be available. The proof in its present state is insufficient to establish this essential point to justify fastening liability upon the insurer.

HAMMER, J., concurs with HOFSTADTER, J.; PECORA, J., dissents in opinion.

Judgment affirmed.