## MARINE TRANSIT CORPORATION v. NORTHWESTERN FIRE & MARINE INS. CO., et al.

### No. 47.

Circuit Court of Appeals, Second Circuit.
Nov. 6, 1933.

William J. Mahar, of New York City, for Marine Transit Corp.

Purdy & Purdy, of New York City (William F. Purdy and John E. Purdy, both of New York City, of counsel), for Northwestern Fire & Marine Ins. Co.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle and Henry N. Longley, both of New York City, of counsel), for Globe & Rutgers Fire Ins. Co.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The libelant agreed to transport wheat belonging to Dreyfus & Co. from Buffalo to New York. The wheat was laden on the barge Ryan it held under a demise charter and towed on the barge without mishap until it reached Troy by way of the Barge Canal. While the Gerald A. Fagan, a tug owned by the libelant, was towing the barge into the government lock at Troy, it negligently brought the Ryan into collision with the wall of the lock, and the cargo of wheat became a total loss. The negligence of the tug was the sole cause of the collision. This disaster brought on litigation between the cargo owner and the libelant which resulted in a final decree under which the owner of the wheat recovered from this libelant $28,132.23. See Dreyfus v. Marine Transit Corporation (C. C. A.) 49 F.(2d) 215; Marine Transit Corp. et al. v. Dreyfus et al., 284 U. S. 263, 52 S. Ct. 166, 76 L. Ed. 282. That decree was satisfied by payment on April 14, 1932, and this suit was brought to compel reimbursement by the defendants as insurers.

At the time the cargo was lost the Marine Transit Corporation carried a policy of insurance issued to it on August 24, 1928, by the defendant Globe & Rutgers Fire Insurance Company, also an open policy of insurance issued to it by the defendant Northwestern Fire & Marine Insurance Company

under which coverage here involved first attached, if ever, on September 13, 1928, when a declaration under that policy was made. This action was brought against each insurance company upon the policy it issued. Each defendant denied liability. The Globe & Rutgers Company was held primarily liable to the amount of the face of its policy; the Northwestern Company was held primarily liable for the excess in the amount of the decree over the limit of the Globe & Rutgers policy and secondarily liable for the portion of the decree charged first against the Globe & Rutgers Company. Both insurance companies have appealed. The Globe & Rutgers policy, in form an "A. I. A. Ocean Tug Special," contained several indorsements of which only the two to be quoted need now be given attention. The first provided that: "It is hereby understood and agreed that the attached collision and Towers' Liability Clause is substituted for the clause now contained in the policy, the latter being waived. This correction to be effective from inception of insurance."

The second was the substituted clause mentioned in the first, and read: "And it is further agreed that if the vessel hereby insured, or her tow shall come into collision with any other vessel, craft or structure, floating or otherwise, or shall strand any other vessel or craft, and the assured, as owner of the vessel, shall in consequence thereof become liable to pay and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such casualty the value of the vessel hereby insured, we, the assurers, will pay the assured such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the vessel hereby insured. And in cases where the liability of the vessel has been contested, with the consent in writing, of a majority of the underwriters on the hull and machinery (in amount), we will also pay a like proportion of the costs and/or expenses thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the collision clause shall be settled on the principle of Cross Liabilities, as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the assured in consequence of such casualty, and it is further agreed that this policy shall also extend to and cover the said vessel's legal liability for any collision with any other vessel, craft or structure, floating or otherwise, and/or stranding which may occur to any vessel or vessels or craft while in tow of said vessel, subject to all the terms and conditions of this clause. It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the vessels involved are the property in part or in whole of the same owners, all questions of responsibility and amount of liability as between such ships or vessels being left to the decision of a single arbitrator, if the parties can agree upon a single arbitrator, or failing such agreement, to the decision of arbitrators one to be appointed by the managing owners of such vessels, and one to be appointed by the majority in amount of underwriters interested in each vessel; the two arbitrators chosen to choose a third arbitrator before entering upon the reference, and the decision of such single or of any two of such three arbitrators, appointed as above, to be final and binding; provided always that this clause shall in no case extend to any sum which the assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, or for loss of life or personal injury."

Whatever liability rests upon the Globe & Rutgers Company follows from the above-quoted provisions of its contract. The defendant claims, first, that its policy did not cover the loss and, second, that, if it did, the Northwestern policy covered it also in such a way that, instead of there being primary and secondary liability on the part of these defendants, the loss should be prorated. There is a question of allowed interest on the damages which will be dealt with later.

The Northwestern policy contained a clause as follows: "At the option of the assured and provided such option is availed of at time of reporting shipments and before any known or reported loss or accident and so stated on the declaration of insurance, this policy covers the legal liability of the assured as carriers, warehousemen, wharfingers, forwarders, freighters as imposed by law and from which they cannot release themselves." When the libelant made its declaration under the above clause, it stated the amount to be $26,880; the merchandise to be "Wheat Per Barge E. A. Ryan Bill of Lading Date Sept. 13, 1928 At and from Buffalo, N. Y. To New York, N. Y."; and it gave as the risk to be covered, "Legal liability." This declaration was received and the coverage became effective before the wheat was lost. A

portion of one clause in the Northwestern policy read: "The assured not to be prejudiced by the presence of the Negligence Clause and/or Latent Defect Clause in the Bills of Lading and/or Charter Party and/or contract of Affreightment."

Another clause in the policy provided that: "In case the interest hereby insured is covered by other insurance (except as hereinafter provided) the loss shall be collected from the several policies in the order of the date of their attachment, insurance attaching on the same date to be deemed simultaneous and to contribute pro rata; provided, nevertheless, that where any fire insurance, or any insurance taken out by the assured or holders of certificates hereunder or by any carrier, bailee or others is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is or would have been available, the assurers being only liable for so much as such other insurance may be deficient towards fully covering the loss hereunder; but in such cases these assurers shall receive and retain the premium payable under this policy, and, in consideration thereof shall guarantee the solvency of the companies and/or underwriters who issued such other insurance and the prompt collection of the loss thereunder to the same extent (only) as this insurance shall have become void under the terms of this clause, but not exceeding, in any case, the amount which would have been collectible under this policy if such other insurance did not exist."

The bill of lading covering the wheat was subject to the provisions of the New York Produce Exchange Canal Grain Charter Party No. 1 as amended, and without question the libelant thereby waived the benefit of the Harter Act (46 USCA §§ 190–195) in respect to the negligent navigation of the tug. The Gerald A. Fagan (C. C. A.) 49 F.(2d) 215. Among the other clauses contained in the Northwestern policy were the following:

"The assured warrant that they will assume no liability for merchandise held in their custody as carriers, warehousemen, wharfingers, forwarders, freighters, beyond that imposed by law and from which they cannot release themselves."

"The assured further agree that they will in no way consent to any act or agreement which shall in any way admit any liability in any matter connected with this insurance to the prejudice of these insurers without the consent of these insurers in writing."

"* * * Where the insurance herein is only against the legal liability of the named insured the term 'assured' shall be deemed to mean and to refer to and include the corporation or corporations named herein as parties hereto."

▮ In behalf of the Globe & Rutgers Company, the claim that its policy did not cover this loss, although it is admitted that the language used is broad enough to include it, is based on the proposition that the parties did not intend to have such a loss covered. This theory is developed in two parts: First. It is said that the "running down" portion of the clause in question is to be read in the light of the construction given it in Lehigh & Wilkes-Barre Coal Co. v. Globe & Rutgers Fire Insurance Co. (C. C. A.) 6 F.(2d) 736, 43 A. L. R. 215, where it was held not to "cover the liability of the owner of the insured tug for any damage sustained by the tow." And the reasoning is that, since the barge which was damaged when its cargo was lost was in fact in tow of the insured tug, there is no liability under the running down clause. Second. While the towers' liability clause was intended to cover damages sustained by the tow, it is not applicable to the situation presented here because the contract between the libelant and the owner of the wheat lost was one of carriage, not towage, and, as the tug and barge are for the purposes of the Harter Act to be considered one vessel, Sacramento Navigation Company v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, since the libelant owned the tug and held the barge under a demise charter, they should not stand in the relation of a tug and tow in deciding the question of liability under the towers' liability clause in this policy of insurance. As to the first proposition, it is enough for the present to let the matter rest where the defendant puts it. If the second proposition is unsound, the policy covers regardless of the first. While in Lehigh & Wilkes-Barre Coal Co. v. Globe & Rutgers, etc., Co. supra, the towers' liability clause was held insufficient to cover the loss, that was so because the hitting of the tow against the riprap of the Cape Cod canal was held not to be a collision within the meaning of the policy. Here, however, a collision of the tow "with any other vessel, craft or structure, floating or otherwise," is expressly covered, and, as the collision with the wall was clearly one with a structure, the last above cited case is not applicable to the claim here made on this point. Nor is the fact that the barge in collision was being towed by the insured tug to be ignored in de-

termining what risk the insurance company took in return for the premium it received. It agreed in so many words that the legal liability of the tug should be covered by the policy for such a collision as this "which may occur to any vessel or vessels or craft while in tow of said tug." In the absence of anything to indicate that the parties did not intend to have these words mean exactly what they usually do mean, the plain import of the language used is to be given effect. See Chase v. Business Men's Assur. Co. of America (C. C. A.) 51 F.(2d) 34.

What the insured tug was in fact doing and what actually happened to the barge rather than a legal rule applicable to some questions arising under the Harter Act are the decisive factors which govern the liability of an insurer who agrees to make liability dependent upon the occurrence of named events. If the parties mean aught else, it should be so stated in the policy. That a tug and tow keep separate identities for some purposes even when they may be considered as one for others is amply shown in R. Lenahan, Jr. (C. C. A.) 48 F.(2d) 110 and The John E. Enright (C. C. A.) 40 F.(2d) 588.

But even so, it is said that there is no liability under this policy because the contract was one of reimbursement and the legal liability insured was that of a tower while the legal liability, imposed on and satisfied by the payment by the libelant for which it now seeks reimbursement, was that of a carrier of the wheat. Yet this contention, like the others, is unsound. That which was insured was the legal liability of the tug and its owner, the libelant, for such a collision as actually did take place. There was nothing in the policy to limit this to the legal liability of a tower nor to exclude the legal liability of a carrier. It was the legal liability arising from an occurrence of the conditions named regardless of the particular legal relationship of the assured to the person entitled to assert such liability. Compare Ferguson v. Providence-Washington Ins. Co. (D. C.) 125 F. 141, affirmed (C. C. A.) 137 F. 1018. For whatever legal liability for such a collision the assured had to respond in damages, the defendant agreed to the extent of its policy to make reimbursement. For the reasons stated, we agree with the District Court that the Globe & Rutgers Company is liable under its policy.

█ The Northwestern Company denies its liability on the ground that, by waiving the Harter Act in issuing a bill of lading for the grain subject to the terms of the New York Produce Exchange Grain Charter Party No. 1 as amended, the libelant violated its warranty that it would assume no liability beyond that imposed by law and from which it could not release itself. Though it did waive whatever right it may have had to defend under the Harter Act a claim made against it on account of the negligent navigation of the tug, its warranty must be read in connection with the other clause in its policy which, as above quoted, shows that it should not be prejudiced by the presence of a negligence clause or latent defect clause in any bill of lading or charter party or contract of affreightment. When so read, it is clear that there was no breach of warranty. It merely exercised a permissive right in making the contract with the owner of the wheat. Some effort has been made to convince us that, when it was agreed that the assured was not to be prejudiced by a negligence clause or latent defect clause in the bill of lading, the word "assured" meant the shipper. We need do no more to answer the argument made in this regard than to point to the provision in the policy itself to the effect that where legal liability only is insured, the word "assured" "shall be deemed to mean and refer to and include the corporation or corporations named herein as parties hereto," and recall that the libelant was a party named and the insurance involved was only against the legal liability of the named insured. It seems clear, therefore, that the Northwestern policy also covered the loss.

█ This policy, however, bound the Northwestern Company to reimburse the assured as follows: "In case the interest hereby insured is covered by other insurance (except as hereinafter provided) the loss shall be collected from the several policies in the order of the date of their attachment, insurance attaching on the same date to be deemed simultaneous and to contribute pro rata; provided, nevertheless, that where any fire insurance, or any insurance taken out by the assured or holders of certificates hereunder or by any carrier, bailee or others is available to the beneficiary of this policy, or would be so available if this insurance did not exist, then this insurance shall be void to the extent that such other insurance is or would have been available, the assurers being only liable for so much as such other insurance may be deficient towards fully covering the loss hereunder; but in such cases these assurers shall receive and retain the premium payable under this policy, and, in consideration thereof, shall guarantee the solvency of the companies and/or underwriters who issued such other insurance and the

prompt collection of the loss thereunder to the same extent (only) as this insurance shall have become void under the terms of this clause, but not exceeding in any case, the amount which would have been collectible under this policy if such other insurance did not exist."

It is said that the loss should be prorated in spite of the above clause, because that clause is throughout subject to the limitation contained in the opening words, "In case the interest hereby insured is covered by other insurance," and that, although the policies may cover the same loss, they did not cover the same interest. We may assume, without deciding, that the same interest insured in the Northwestern was not covered by the other insurance. That involves only one situation dealt with in the clause. The second situation is set forth immediately following the first with appropriate words to set it apart from the first, as follows: "Provided, nevertheless, that where any fire insurance, or any insurance taken out by the assured or holders of certificates hereunder or by any carrier, bailee or others is available to the beneficiary of this policy, or would be so available if this insurance is or would have been available, the assurers being only liable for so much as such other may be deficient towards fully covering the loss hereunder. * * *" This certainly must mean that, regardless of how liability is limited when the same interest is otherwise covered by insurance, the insurance is void to the extent provided in the portion of the clause just above quoted when the named conditions are present. To hold otherwise would be a failure to give plain words their meaning. In view of this, we agree with the District Court that the Globe & Rutgers Company is primarily liable to the amount of its policy; that the Northwestern Company is primarily liable, of course within its policy limits, though there is no question of sufficiency as to that policy, for any excess in the decree over the value of the Globe & Rutgers policy and secondarily liable for the remainder under its above-quoted agreement to guarantee the solvency of whoever issued the other insurance and the prompt collection of the loss thereunder.

Yet the amount of the decree appears to be wrong, because interest was computed from the date of the decree in the original suit of Dreyfus & Co. against the libelant rather than from the date when the libelant paid after the decree was affirmed. The decree in the present case includes certain counsel fees incurred in the defense of the previous suit which we do not understand to be questioned, but which have been included in the sum on which interest has been computed from the date of the decree in the Dreyfus suit. As these policies both provided for reimbursement only, it is apparent that the libelant will be fully paid as the defendants in their policies agreed if it receives in this action the amounts it has paid in satisfying the Dreyfus decree and in paying its attorneys for services and expenses in that case with interest from the time it made such payments.

The decree is modified in accordance with the above in respect to the allowance of interest, and is otherwise affirmed.