BEE LINE TRANSP. CO. v. CONNECTICUT FIRE INS. CO. OF HARTFORD.

SAME v. UNION MARINE INS. CO., Limited.

Nos. 335, 336.

Circuit Court of Appeals, Second Circuit.

April 1, 1935.

Single & Tyler, of New York City (Christopher E. Heckman, of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle, of New York City, of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellant sued appellees in admiralty to recover under policies of marine insurance, issued by each appellee, insuring appellant for legal liability of its tugs arising from causes specified. Appellant, engaged in the towing business, operates barges and tugs transporting cargoes, and on the occasion when this loss was sustained, November 12, 1927, its tug was towing barges, coal laden, owned by it. During heavy weather, two of the barges pounded, sustained damages to their seams, and sank off Block Island. in Block Island Sound and, with their cargoes of coal, became a total loss.

The owner of the cargoes sued successfully, recovering against the tug in rem for value of the cargoes. The District Court for the District of Massachusetts held the tug at fault and legally liable for the loss of the cargoes. The Wyoming, 58 F.(2d) 789. She and the appellant paid the damages. Liability was imposed for proceeding through heavy seas which caused the barges to pound, leak, and sink. In defending that action, legal expenses were incurred by appellant.

The policy issued, by each of the appellees, to the appellant, contained a "running down" and "tower's liability" clause. It provided: "And it is further agreed that if the vessel hereby insured, or her tow, shall come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause such other vessel or craft to strand and/or strike the ground or any substance or thing (other than water); and the assured shall in consequence thereof become liable to pay, and shall pay by way of damages, to any other person or persons any sum or sums not exceeding in respect of any one such collision the value of the vessel, hereby insured. * * * And in cases where the liability of the vessel has been contested, * * * we will * * * pay a like proportion of the costs thereby incurred or paid; but when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of *Cross Liabilities* * * * *and it is further agreed that this policy shall also extend to and cover the said vessel's legal liability for any collision and/or grounding and/or stranding and/or loss or damage which may occur to any vessel or vessels or craft while in tow of said vessel, subject to all the terms and conditions of this clause.* * * * *"*

The court below held that "clause" when used in this policy must not be regarded as synonymous with "paragraph." "Clause" in a legal document, such as a contract, means a single paragraph or subdivision of one of the subdivisions of the document. 11 Corpus Juris, 830. The "running down" and "tower's liability" clause of the policies here is concluded by words forming a sentence, and, in syntax, a paragraph reading: "Provided always that this clause shall in no case extend to any sum which the assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, or for loss of life or personal injuries." "This clause," as used, refers to all that is contained in the provisions above which we referred to as the "running down" and "tower's liability" clause.

If the limitation placed upon the contingencies of the clause by the court below be adopted, the quotation above would have no meaning; and still it is plain that it was intended to exclude from the coverage of the "running down" and "tower's liability" provision the assured's liability for loss of life or personal injury. To accept the construction adopted below would be to render portions of the policy devoid of meaning. It was said below that the words "subject to all the terms and conditions of this clause" was not clear. We think this view misled the court.

The "tower's liability" clause in the policies covered the legal liability suffered by appellant. The collision clause covers liability to persons in the event of legal liability of the insured vessel which flows from an accident, in which a vessel not in tow is involved. It is stated that, in the event of

liability arising from such a cause, the assured's payment to any person is to be repaid by the insurers. The policy is extended to cover another class of legal liability, that is, liability arising from "loss or damage occurring to a vessel while in tow of the insured tug," and this regardless of whether or not another vessel not in tow is involved. It was intended to extend the benefits of the "running down" clause to cover a situation where the liability arose from an accident occurring only to one or more of the vessels in tow rather than from an accident in which the insured vessel or her tow becomes involved with a vessel not in tow. This construction is borne out in the phrase "and it is further agreed that this policy shall also extend to and cover," etc. Such coverage as is given by the "running down" clause is extended to the payment of damages to any other person or persons where the damage is only to the tow of the insured vessel.

Appellees argue that even though the "running down" clause includes payments made to cargo owners, or other persons, and even though, by its words, coverage is extended to include legal liability resulting from collision occurring to a vessel in tow, the only coverage included in the "tower's liability" clause is for damages paid to the owner of the boat in tow. This is contrary to our decision in Marine Transit Corp. v. Northwestern Fire & Marine Ins. Co., 67 F.(2d) 544, 547. In that case, the assured's tug was towing a barge loaded with cargo. The tug was negligently navigated, allowing the barge to strike an abutment on the barge canal. Arbitration proceedings followed, and an award was made to the owner of the cargo on the barge. The tug owner had two policies—a hull policy which included a "running down" and "tower's liability" clause, and a Carrier's Legal Liability policy. Each of the insurers claimed that their policies did not cover the loss. The policy containing the "running down" clause insured against liability for collision with, or stranding of, any other vessel by the insured tug or her tow. The "tower's liability" clause insured against legal liability for the vessel due to any collision which might occur to any vessel while in tow of said vessel. We held that the cargo loss was covered by the "tower's liability" clause, saying: "It is agreed in so many words that the legal liability of the tug should be covered by the policy for such a collision as this 'which may occur to any vessel or vessels or craft while in tow of said tug.' In the absence of anything to indicate that the parties did not intend to have these words mean exactly what they usually do mean, the plain import of the language used is to be given effect."

In the instant case, the appellant's legal liability for loss or damage which might occur to a vessel in tow was insured against. In the Marine Transit Case, supra, the coverage was only for collision and/or stranding. Including additional perils does not change the nature of the obligation from that which we imposed in the Marine Transit Case. By the terms of this policy it makes no difference whether the legal liability arose from the occurrence to a vessel in tow of a collision, a grounding, a stranding, a damage, or a loss. If any of these contingencies occurred to a vessel in tow, as a result of which the insured incurred a legal liability, the policy covered. This legal liability arose from the occurrence of a named contingency regardless of the particular legal relationship of the assured to the person entitled to assert such liability. Marine Transit Case, supra. The agreement was that whatever legal liability resulted under these terms of the policy, the insurers promised to pay any damages to the extent of their policy.

There is no distinction in the policies between the classes of persons whose recovery from the tug is to be repaid by the underwriters to the assured; no difference between the liability of the tug to a cargo owner or vessel is recognized. The tug, the towing vessel, was responsible for all damages proximately caused by her negligence. Legal liability of the tug extends to vessel owners and cargo owners regardless of the particular relationship of the assured to the persons entitled to assert such liability. The insurer undertook a legal liability coextensive with that of the assured. The named incidents referred to in the towing clause were the sole limitations upon the causes of the legal liability assumed.

The phrase "subject to all the terms and conditions of this clause" covered a promise by the insurers to pay fees expended for legal services in the defense of the suit wherein liability of the appellant was established.

Decrees reversed.