**AETNA INS. CO. et al. v. HENRY DU BOIS SONS CO. et al.**

District Court, S. D. New York.

Oct. 13, 1943.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen, of New York City, of counsel), for plaintiffs.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for defendants.

GODDARD, District Judge.

The plaintiffs and the defendants have moved by motion and cross motion respectively for a declaratory judgment pursuant to Section 274d of the Judicial Code, 28 U.S.C.A. § 400.

The defendant Henry DuBois Sons Company [hereinafter referred to as DuBois] in its business of dredging contractors own and operate the tug Ariosa and the dump scow D 22.

On March 28, 1938, plaintiffs severally, not jointly, and in various percentages, issued an insurance policy to DuBois on the tug Ariosa in the sum of $45,000. On August 26, 1938, the defendant Hartford Fire Insurance Company [hereinafter referred to as Hartford] issued a policy of insurance to cover the scow D 22 in the sum of $10,000. Both policies contain collision clauses with a cross liabilities provision.

On December 7, 1938, while proceeding in New York Harbor, the scow in tow of the Ariosa, collided with the motor vessel Segundo, as a result of which both the scow and the Segundo were damaged.

The defendant DuBois in March, 1939, filed a libel in the United States District Court for the Eastern District of New York against the Segundo, for the damage to the scow D 22. A/S Ivarans Rederi, a foreign corporation, claimant of the Segundo, impleaded the tug Ariosa, and also filed a cross libel against the tug, for the damage sustained by the Segundo. These suits were consolidated and a final decree was entered on November 17, 1941, wherein both the Segundo and the Ariosa were found to be at fault, and the claimants for the Segundo were permitted to recover from Henry DuBois Sons Company the sum of $2,122.67. This sum was arrived at as follows:

| | | |
|---|---:|---:|
| ½ Segundo's damages [total damages were $20,611.17] | $10,305.58 | |
| Interest to date of entry of decree | 1,755.62 | |
| Costs | 811.04 | |
| Total liability of Henry DuBois Sons Company [on cross-liabilities basis] | | $12,872.24 |
| ½ scow D 22's damages [total damages were $18,524] | 9,262.00 | |
| Interest to date of entry of decree | 1,487.57 | |
| Total liability of Segundo to D 22 [on cross-liabilities basis] | | 10,749.57 |
| Net balance against Henry DuBois Sons Company in favor of Segundo | | 2,122.67 |

On April 19, 1939, prior to the adjudication stated above, but after the filing of the libel by Henry DuBois Sons Company, the Hartford Fire Insurance Company advanced to DuBois $9,900, an amount approximately equal to that company's liability to the scow owner, and DuBois executed a loan receipt, which reads:

"Loan Receipt

"Received from Hartford Fire Insurance Company the sum of Nine thousand nine hundred and 00/100 Dollars as a loan and to the extent of such loan made, to be repayable only out of any net recovery the undersigned may effect from any person· and/or persons, firm or corporations, on or by reason of any claim for loss or damage to the dumper 'D-22' sustained and/or arising out of and/or connected in any manner with an accident occurring on or about the 7th day of December, 1938 between the dumper 'D-22', while in tow of the tug 'Ariosa' and the Steamship 'Segundo' by reason whereof the dumper 'D-22' was damaged.

"The undersigned hereby pledges to the said insurance company such claim or

claims and any recovery thereon to the extent of the amount hereinbefore loaned.

"In further consideration of said loan, the undersigned agrees to present any and all claims and to begin and prosecute any and all legal proceedings and/or arbitrations which the said insurance company may require the undersigned to present, begin or prosecute, and further agrees not to settle or compromise any such claim, legal proceeding or arbitration without the consent in writing of the said insurance company.

"The expense of any such litigation shall be apportioned pro rata between the insurance company and the undersigned in accordance with the amount of the various interests.

"The undersigned hereby agrees to execute, upon request, in its name, any and all documents which may be deemed advisable by said insurance company to carry into effect the purposes of this agreement.

> "Henry Du Bois Sons Co. (Signed)
> "H. N. DuBois, Jr. (Signed)
> "Vice-Pres."

This sum represented the $10,000 face value of the insurance policy issued by Hartford, less a deductible average of $100.

The insurance policy issued by the plaintiffs on the tug Ariosa contained the following provision which is known as a Cross Liabilities Collision and Towers-Liability Clause: " * * * when both vessels are to blame, then unless the liability of the owners of one or both of such vessels becomes limited by law, claims under the collision clause shall be settled on the principle of Cross Liabilities, as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels, such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such casualty." Immediately thereafter, and in the same section, there follows what is known as the "sister ship" provision, which reads: "It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the vessels involved are the property in part or in whole of the same owners, all questions of responsibility and amount of liability as between such ships or vessels being left [to arbitration, etc.]"

There are similar provisions in Hartford's policy covering the D 22.

Subsequent to the entry of the final decree, DuBois on November 19, 1941, made claim against plaintiffs under the Cross Liabilities provision in the collision clause in the sum of $23,621.81 less deductible average and reinstatement premium. Instead of paying that amount plaintiffs on November 27, 1941, paid DuBois $2,122.67, so that DuBois could discharge its obligation to the owners of the Segundo, this being the differential which the court had awarded in their favor. This payment was made without prejudice to the conditions of plaintiffs' policy. Thereafter plaintiffs, pending the settlement of the controversy as to the Syndicate's liability under the policy paid, without prejudice to the rights of either party, additional $9,765.78 to DuBois. This sum was determined as follows:

| | |
|---|---|
| ½ Segundo's damages............ | $12,872.24 |
| ½ Scow's damages ............... | 10,749.57 |
| | $23,621.81 |

| Less | | |
|---|---|---|
| Amount received from Barge Underwriters ...................... | 9,900 | |
| Interest there from time of payment ............................ | 1,583.36 | |
| | 11,483.36 | |
| Payment to satisfy decree $2,122.67 | | |
| Deductible average ...... 250. | 2,372.67 | |
| | | 13,856.03 |
| | | $ 9,765.78 |

Plaintiffs contend that they have satisfied in full their liability to defendants or either of them; that DuBois' claim must be reduced by the amount with interest thereon previously paid to it by Hartford under the "loan receipt"; further, plaintiffs contend that Hartford has no claim against them by subrogation or otherwise.

Defendants urge that the scow underwriters payment under the "loan receipt" is no concern of plaintiffs and does not reduce plaintiffs' liability to DuBois under their policy and that there is now due DuBois from the plaintiffs the sum of $11,483.36 less a reinstatement premium; that DuBois having paid the premiums, has the right to elect whom it may look to for the damage it has sustained.

The plaintiffs' argument is that DuBois, as the owner of the scow, could not sue himself for the negligence of his own tug and since there is no liability on the part of DuBois, there is no liability on the part of the tug's underwriters. Therefore plaintiffs can only be liable if they had volun-

tarily agreed to permit, in favor of the scow's underwriters, the same subrogation rights against them as would exist if the tug were owned by a third party.

Defendants' position is that under the "sister ship" provision plaintiffs agreed to indemnify the assured for damage to other vessels of the assured, and that the question presented is really not one of subrogation, but rather of policy construction. It seems to me that the defendants are right.

▆▆ The true import of the "sister ship" clause is this—the underwriter agrees to indemnify its assured for losses to the assured's other vessels caused through the negligence of the insured vessel, for which there would otherwise be no legal liability. See The Augusta-Detroit, 1923 A.M.C. 816, at 819, 1930 A.M.C. 1035, 1037. Thus, the tug underwriter has specifically assumed, under its contract, liability for the damage to the scow D 22. If Hartford were not in the picture there clearly would be no doubt as to plaintiffs' liability to DuBois for the damage to the scow. The issue therefor becomes—ought plaintiffs to be released from its liability simply because Hartford is in the picture, it having also insured part of the scow's damage? I think not. Nothing in the policy may in any way be taken to indicate that the parties contemplated any such release of plaintiffs' liability if there were another underwriter. This conclusion is strengthened by the fact that plaintiffs failed to provide in their policy that if any other insurance taken out by the assured were available to the assured, then plaintiffs' insurance was to be void to the extent of this other insurance.

It is apparently a frequent practice among underwriters to so limit their liability. See Marine Transit Corp. v. Northwestern Fire & Marine Ins. Co., 2 Cir., 67 F.2d 544. Plaintiffs in drafting its tug policy equally had the opportunity to thus limit its liability. It did not do so. The policy as it was written by the plaintiffs gives rise to no implication of such limited liability. The absence of any such clause limiting liability fairly implies that the parties did not intend such limitation of liability.

Confusion has been injected into the discussion by citing the Augusta-Detroit case as a precedent. I do not regard it as a precedent which is controlling in the case at bar. The facts are substantially different. In any event the question now before the court is primarily one of construction of a policy. In that respect, the Augusta-Detroit arbitration is helpful only for its discussion of the meaning of the "sister ship" clause.

The fact that Hartford has advanced funds to DuBois under a loan receipt does not alter the situation. This was purely a temporary arrangement by the underwriter to accommodate its client. In Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U. S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522, such an arrangement was held to be a lawful one. In the Luckenbach case there was an agreement between insurers and a shipper whereby the insurers loaned to the shipper the amount of a loss caused by the carrier's negligence, to be repaid only insofar as the shipper recovered from the carrier. The court held that the loan was not payment of the insurance.

Judgment for plaintiffs is denied and judgment may be entered in favor of Henry DuBois Sons Company for the relief demanded in its answer.

Settle order on notice.