**ÆTNA INS. CO. et al. v. HENRY DU BOIS SONS CO. et al.**

**No. 402.**

Circuit Court of Appeals, Second Circuit.

Aug. 24, 1944.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen and Herbert M. Lord, both of New York City, of counsel), for plaintiffs-appellants.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for defendants-appellees.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a judgment of the District Court for the Southern District of New York in a suit for a declaratory judgment to determine the liability of the plaintiffs on a policy of marine insurance. The plaintiffs and the defendants moved for judgment on the pleadings. The motion of the defendants was granted and from the judgment entered thereon, 53 F.Supp. 516, the plaintiffs have appealed.

On August 26, 1938, the plaintiffs issued a marine insurance policy for $45,000 covering, inter alia, the legal liability up to the amount of the policy, of defendant Henry DuBois Sons Company for collision damages caused by its tug Ariosa. They became severally liable, each for a stated percentage, for the amount of the insurance. The defendant Hartford Fire Insurance Company issued to the DuBois Company on August 26th in the same year a policy of insurance in the amount of $10,000 covering within the policy limits physical damage to its dump scow D 22. Both of these policies were in effect when the Ariosa while towing the D 22 brought the latter into collision with a steamship, the Segundo, owned by a third party.

In litigation which followed, it was established that the collision was without fault on the part of the D 22 and was caused by the mutual fault of the Ariosa and the Segundo, and each was held for half damages. The Ariosa was not injured. The damage to the scow was less in amount than that sustained by the Segundo and the half damages due the latter were paid to her owners by the payment of the excess of one half its damages over one half the damages of the D 22. The plaintiffs made this payment under the Ariosa policy and there is now no controversy in respect to that.

The Ariosa policy which the plaintiffs had issued contained a so-called "sister ship" clause, however, under the provisions of which the liability of the Ariosa for the remaining one half the damages the D 22 sustained is, so far as the underwriters are concerned, to be treated as though the tug and scow did not have a common owner. Had the scow not been insured at all it is clear and undisputed that the plaintiffs would have been bound under the policy on the Ariosa not only to pay to the Segundo one half its damages but to pay one half the scow's damages also. In paying the Segundo in discharge of the liability to it, the plaintiffs took credit for one half the damage to the scow. The DuBois Company presented a claim to the plaintiffs under the Ariosa policy which included this one half of the scow's damages plus the remaining one half. The plaintiffs paid the claim after making adjustments which included a deduction with interest of the amount the DuBois Company had received from the Hartford Fire Insurance Company under the following conditions.

While the litigation above mentioned was pending, the Hartford Fire Insurance Company advanced to DuBois the full amount collectible on its policy on the scow, $9,900.00, on a loan receipt reading as follows:

"Loan Receipt

"Received from Hartford Fire Insurance Company the sum of Nine Thousand Nine Hundred and 00/100 Dollars as a loan and to the extent of such loan made, to be repayable only out of any net recovery the undersigned may effect from any person and/or persons, firm or corporations, on or by reason of any claim for loss or damage

to the dumper 'D-22' sustained and/or arising out of and/or connected in any manner with an accident occurring on or about the 7th day of December, 1938 between the dumper 'D-22', while in tow of the tug 'Ariosa' and the Steamship 'Segundo' by reason whereof the dumper 'D-22' was damaged.

"The undersigned hereby pledges to the said insurance company such claim or claims and any recovery thereon to the extent of the amount hereinbefore loaned.

"In further consideration of said loan, the undersigned agrees to present any and all claims and to begin and prosecute any and all legal proceedings and/or arbitrations which the said insurance company may require the undersigned to present, begin or prosecute, and further agrees not to settle or compromise any such claim, legal proceeding or arbitration without the consent in writing of the said insurance company.

"The expense of any such litigation shall be apportioned pro rata between the insurance company and the undersigned in accordance with the amount of the various interests.

"The undersigned hereby agrees to execute, upon request, in its name, any and all documents which may be deemed advisable by said insurance company to carry into effect the purpose of this agreement.

> "Henry DuBois Sons Co.  (Signed)
> "H. N. DuBois, Jr.  (Signed)
> "Vice-Pres."

Claiming that they are not liable under their policy to the extent Hartford had paid as above, the plaintiffs brought this suit for a declaratory judgment to resolve that controversy.

■ We think the judgment below was right. It should be noted that there was no clause in the policy which the plaintiffs issued giving them the benefit of, or any interest in, any insurance which might cover any vessel damaged through the fault of the Ariosa. Not having any contractual right to any such benefit they can now have none except by operation of law. Their policy and that on the scow did not cover the same liability, and though policies are sometimes written which cover loss only to the extent of the excess over any other insurance coverage, see Marine Transit Corporation v. Northwestern Fire & Marine Ins. Co., 2 Cir., 67 F.2d 544, this contract was not of that kind and must, of course, be given effect as written. Moreover, this is not even an instance where an insured has already been reimbursed from other insurance partially or wholly for a loss. The Hartford policy has not been paid except upon the condition set forth in the loan receipt. Such a receipt is a lawful contract which will be enforced. Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. It is not an unconditional payment of the insurance.

■ The contention of the plaintiffs accordingly boils down to this. Because there happened to be hull insurance on a vessel not at fault which was injured through the fault of the Ariosa for which they are liable under their policy, their liability is reduced by the amount of that other insurance on the ground that they can compel its collection for their benefit. As their contract with the insured failed so to limit liability they would have the court imply such limitation as a matter of law. Of course where there is double or concurrent insurance the assured may recover no more than his full loss, which is ultimately borne by the underwriters proportionately to their respective commitments. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868. But here there is no double insurance and there can be no double recovery at all.

The important issue is whether under the so-called sister ship clause hull insurance on the vessel damaged through the fault of the sister ship does in the absence of any agreement to that effect inure to the benefit of the insurer of the legal liability of the owner of the ship at fault. The risk those insurers assumed under their policy was the risk upon which the premium they received was based and there is no inequity in requiring them to perform that which they undertook and for which they were paid. If they do, the result will in effect be that the D 22, which was not in any wise at fault, will recover her full damages, one half from the Segundo and one half from the Ariosa. The Segundo will be paid one half her damages by the Ariosa. The underwriters of the Ariosa, the plaintiffs, will reimburse the Ariosa for the one half of the Segundo's damages paid and will pay the one half of the damages sustained by the D 22 which were not, in effect, paid by the Segundo.

One of the pertinent clauses in the plaintiffs' policy is a cross liabilities collision and tower's liability clause which so far as ma-

terial reads: "* * * when both vessels are to blame, then unless the liability of the owners of one or both of such vessels become limited by law, claims under the collision clause shall be settled on the principle of Cross Liabilities, as if the owners of each vessel had been compelled to pay to the owners of the other such vessels, such one half or other proportion of such latter's damages as may be properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such casualty." The other is the so-called sister ship clause which so far as pertinent reads: "It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the vessels involved are the property in part or in whole of the same owners, all questions of responsibility and amount of liability as between such ships or vessels being left * * *" to arbitration as herein provided, and the parties have agreed to abide by the result of the previously mentioned litigation over the collision in lieu of arbitration under this clause.

Their liability thus established, we think the plaintiffs were bound to pay in accordance with the terms of their policy regardless of any hull insurance the owner of the D 22 had on that scow. Even though for present purposes the owner of the Ariosa and the owner of the scow, though in fact the same, are to be treated as separate and distinct parties, it is obvious that payment by the underwriters of the legal liability of the owner of the Ariosa can give them no rights by way of subrogation except to be put in the position a separate and distinct owner·of the Ariosa would have been upon making such payment. The owner of the ship partially at fault certainly has no claim against the owner, treated as a third party, of the blameless scow and has no recognizable interest in any insurance which that owner may have had on the hull of that scow. We need not decide whether the insurer of the scow, if and when it paid, would be subrogated to the rights of the scow owner against the Ariosa and the Segundo. That is unnecessary because the defendants have in the loan receipt given effect to the equivalent of a right of subrogation and made double recovery by the scow owner an impossibility.

The plaintiffs, however, insist that under the decision in Marine Ins. Co. v. McLanahan, 4 Cir., 5 F.2d 773 (see also, The Augusta, 1923 A.M.C. 816, Augusta-Detroit, 1930 A.M.C. 1035 and The Augusta, 1924 A. M.C. 872), the sister ship clause should be so construed as to relieve them from liability under their policy to the extent of the hull insurance on the scow.

We agree with the court below that the authority relied on does not support the contention. That controversy grew out of a collision between the S. S. Capitaine de Beauchamp and the steamer Augusta, which had the barge Detroit in tow. The de Beauchamp was damaged and the Detroit was sunk and became a total loss. The Augusta and Detroit were under common ownership and it was established that the Augusta was solely at fault for the collision. She was surrendered in limitation proceedings. Both the Augusta and the Detroit were insured by underwriters, in part the same, under separate policies which contained running down and sister ship clauses substantially to the same effect as those hereinbefore quoted in part from the Ariosa policy. The underwriters paid the full amount of the policy on the Detroit but that fell short of the amount of the loss. Thereupon the owner demanded payment of the remainder under the policy on the Augusta, which was sufficient. This led to disputes which were arbitrated in proceedings whose outcome established, in short, that the amount surrendered by the Augusta's owners in the limitation proceeding was not the limit of the underwriter's liability under the Augusta policy and that such underwriters were bound under the sister ship clause to pay for the loss of the Detroit to the extent that the owner had not been compensated for it out of the proceeds of the Detroit policy. Though the underwriters had in effect thus been given credit in fixing their liability under the Augusta policy for what they had already paid on the Detroit policy, they claimed to be entitled by subrogation to recover back the amount paid on the Detroit policy. Their threats to sue for it induced the assured to bring suit in the District Court for the District of Maryland to enjoin them from so doing. They were enjoined and appealed from that decree, which was affirmed. Marine Insurance Co. v. McLanahan, supra. So far as that decision involved issues here presented, it was held that the insurer of a towing vessel at fault for collision damages to a vessel under common ownership could not, in the absence of policy provisions to that effect, diminish its liability under collision and sister ship clauses for that loss by the

amount of hull insurance paid on a policy on the vessel damaged. They were not required to pay the entire loss and the amount of the Detroit policy in addition and thus give the assured the windfall of double insurance, but they were not permitted to reduce their liability under the Augusta policy simply because there was separate insurance on the barge lost. What was denied them is therefore in effect what was denied these plaintiffs when the trial judge denied their motion for judgment and granted that of the defendants.

Judgment affirmed.