**HARBOR TOWING CORP. v. ATLANTIC MUT. INS. CO.**

No. 6206.

United States Court of Appeals,
Fourth Circuit.

Argued March 13, 1951.

Decided May 11, 1951.

**410**

John H. Skeen, Jr., Baltimore, Md. (William A. Skeen, Baltimore, Md., on the brief), for appellant.

George W. P. Whip, Baltimore, Md. (Lord, Whip & Coughlan, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case calls for the interpretation of a policy of marine insurance containing a full collision clause whereby Harbor Towing Corporation was insured in respect to its steel barge No. 110. On October 30, 1946, during the life of the policy, the barge, while in tow of the tug Hustler, also owned by the insured, was in collision with the Ruth Conway, a motor vessel, in the Chesapeake & Delaware Canal and the Conway and her cargo were lost. It was determined in litigation that ensued that the accident was caused by the negligent operation of the tug and that the barge was in no way to blame, although the collision took place between the barge and the Conway. Accordingly, the libel as to the barge was dismissed and the Towing Corporation and the tug were held liable to the owner of the Conway and the owner of the cargo for damages in the aggregate sum of $40,959.20. See The Ruth Conway, D.C., 75 F.Supp. 514, and Harbor Towing Corp. v. Parker, 4 Cir., 171 F.2d 416.

The Towing Corporation paid the amount of the judgment and brought suit under the insurance policy on the barge wherein the vessel, tackle, apparel, &c. were valued at $10,000, and the liability of the owner in case of collision was covered by a provision that if the vessel should come into collision with any other vessel, and the assured in consequence thereof should become liable to pay and should pay by way of damages to any other person any sum in respect of such collision, the underwriters would pay the assured such proportion thereof as their respective subscriptions should bear to the value of the insured vessel. The entire collision or running down clause is set out in the margin.[1]

---

1. And it is further agreed that if the Vessel hereby insured shall come into collision with any other Ship or Vessel and the Assured or the Charterers in consequence thereof or the Surety for either or both of them in consequence of their undertaking shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, we, the Underwriters, will pay the Assured or Charterers such proportion of such sum or sums so paid as our respective subscriptions hereto bear to the value of the Vessel hereby insured;

Provided always that our liability in respect of any one such collision shall not exceed our proportionate part of the value of the Vessel hereby insured.

And in cases where the liability of the Vessel has been contested, or proceedings have been taken to limit liability, with the consent in writing of a majority (in amount) of the Underwriters on the hull and/or machinery, we will also pay a like proportion of the costs which the Assured or Charterers shall thereby incur, or be compelled to pay;

But when both vessels are to blame, then, unless the liability of the Owners or Charterers of one or both of such vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of Cross-Liabilities as if the Owners or Charterers of each vessel had been compelled to pay to the Owners or Charterers of the other of such Vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured or Charterers in consequence of such collision;

And it is further agreed that the principles involved in this clause shall apply to the case where both Vessels are the property, in part or in whole, of the same Owners or Charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Managing Owners or Charterers of both vessels, and one to be appointed

The District Judge rejected the claim on the ground that the collision clause is intended to furnish the owner of the barge indemnity for damages paid in consequence of a collision only when the insured vessel has been at fault, and not when, as in this case, she was in no way to blame for the accident. In reaching this conclusion the judge found himself unable to follow the precedent set in The Fanny D, 5 Cir., 112 F.2d 347, in a precisely similar situation. The court noted in that case that the accident fell within the literal terms of the collision clause of the policy since the insured vessel had come into collision with another vessel and the owner had been obliged to pay damages in respect thereto; and the court therefore held that the Insurance Company was liable. Pointing out that the assured owned both vessels and acted as master and pilot of the tug at the time of the collision, the court said, 112 F.2d at page 350:

"* * * To give the policy the interpretation contended for by the insurance company we would have to read into the full collision clause 'provided the insured vessel is herself at fault,' or words to that effect. Insurance policies that are vague or ambiguous are to be construed against the underwriter. If it had been the intention of the parties to restrict the coverage of the policy to cases in which the insured vessel was herself at fault it would have been very easy to have written it in instead of leaving it to be inferred by a strained construction. Eggers, the 'assured,' was the beneficiary and not the barge. We construe the policy to be broad enough to cover personal liability of Eggers resulting from the collision, regardless of whether the barge could be held responsible in rem.

"In this case, whether the barge was a passive instrument or to be considered together with the tug as in law one ship, the negligence that caused the collision was the faulty navigation of the tow by Eggers. He could not limit his personal liability for the accident by surrendering either the tug or barge or both. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788; Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490. When the barge came into collision with the ship Eggers became liable personally to pay damages suffered by the ship caused by that collision. If he pays the damages he will be entitled to indemnity under the hull policy."

We are unable to agree with this interpretation of the policy and are of the opinion that the judgment of the District Court should be affirmed. It is of course true that an ambiguous clause in an insurance policy should be construed against the underwriter, and that the clause under consideration was obviously designed to indemnify the insured, not the vessel, in case he should become liable for damages in respect to a collision between the insured vessel and another ship. But insurance policies, like other contracts, must be given a reasonable interpretation; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416; Provident Life & Accident Ins. Co. v. Anderson, 4 Cir., 166 F.2d 492, 495. And it becomes clear, when all the terms of the collision clause are borne in mind, that the parties intended to safeguard the owner against the consequences of a collision in which his vessel

by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above, to be final and binding. Provided always that this clause shall in no case extend to any sum which the Assured or Charterers may become liable to pay or shall pay for removal of obstructions under statutory powers, for injury to harbors, wharves, piers, stages and similar structures, consequent on such collision, or in respect of the cargo or engagements of the Insured Vessel, or for loss of life, or personal injury. And provided also that in the event of any claim being made by *Charterers* under this clause *they shall not be entitled to recover in respect of any liability to which the Owners of the Vessel*, if interested in this Policy at the time of the collision in question, *would not be subject*, nor to a greater extent than the Shipowners would be entitled in such event to recover. (Italics supplied).

was at fault. Indeed it may fairly be said that the clause "provided the insured vessel is herself at fault," which was thought by the court in the case of The Fanny D to be essential to the company's defense, is implicit in the words which the company employed in several parts of the clause.

First, it should be noted that the policy covers the barge and no other vessel, and that the first paragraph of the running down clause relates to liability falling upon the owner on account of the vessel's action. One does not associate liability with blameless conduct and so without more it would not be unreasonable to adopt the company's interpretation. There is, however, more explicit indication in the subsequent terms of the document. Express provision is made for the payment of costs by the underwriters "in cases where the liability of the vessel is contested" with their consent; and there is also provision for the settlement of claims under the collision clause "when both vessels are to blame," so that in the absence of fault coverage seems to be lacking.

Finally the running down clause includes the "sister-ship" clause which applies where both vessels in collision are the property of the same owner. In that contingency neither vessel of a common owner could collect damages from the other; but the sister-ship clause nevertheless gives the owner protection by declaring that the principles involved in the collision clause shall apply, "all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single arbitrator;" and there is added the provision that charterers "shall not be entitled to recover in respect of any liability to which the owners of the vessel, if interested in this policy at the time of the collision in question, would not be subject; nor to a greater extent than the shipowners would be entitled in such event to recover." These provisions plainly signify that the liability insured against is the liability of the common owner for the trangressions of his vessels, and that questions of fault as between the vessels shall be submitted to arbitration. Difficult questions sometimes arise when the two vessels of a common owner are insured by different insurance companies. But the courts have taken for granted, in construing the clause in cases of this sort, that the liability of the owner, which is indemnified by a particular policy, is that which springs from the fault of the vessel covered by the policy.[2] See Marine Ins. Co. v. McLanahan, 4 Cir., 5 F.2d 773; Aetna Ins. Co. v. Henry Du Bois Sons Co., 2 Cir., 144 F.2d 262. Our conclusion is that the indemnification furnished by the underwriter in this policy in suit to the owner of the barge is confined to protection from the vessel's misdeed.

We find that these views are supported by other decisions in which the running down clause has been construed. Of these only the Norman Kelly, 1923 A.M.C. 959, seems to have been called to the attention of the Fifth Circuit, and that one only in connection with a motion for rehearing after the opinion of the court had been filed. The case was directly in point since a barge in tow of a tug, both owned by the same person, collided with a steamer due to the fault of the tug and the owner filed suit under the policy on the barge which had been exonerated. In rejecting the claim the court said: (at pages 963–964) " * * * The liability as a result of such collision must be such a liability as would permit the third person or persons to recover in a suit at law for the damage done. In other words, when the parties made this contract it must be assumed that both understood and intended that when the assured became liable by reason of a collision it must be such a liability, and only such, as could be enforced in a court of law against the assured. It necessarily follows from this that under the facts in the instant case if some party other than the assured had owned the Sanders no claim of the assured could be made under this clause of the contract against the Assurance Company. These facts lead to

2. The record in the pending case does not show whether the towing corporation held an insurance policy on the tug.

the further conclusion that by the provisions of the contract in question the parties must have contemplated that a basis for the liability of the assured to pay there must be, in some degree at least, a responsibility on the part of the barge for the collision. * * * So that it may be said that woven into this provision in respect to liability, and as a necessary part or element thereof, is a further legal responsibility on the part of the barge for the collision. This is not only the natural effect of the language used but, in our judgment, is the necessary legal effect of such language. We cannot conceive that such language imports that the assured in any capacity other than that as the owner of the barge was intended by the parties to be indemnified against the claims of third persons from a collision in which the barge might be involved. * * * Our conclusion in this respect is further fortified by the fact that as a general proposition of law it must be assumed that the contract involved here was made in conformity with the established doctrines of maritime law. This law regards a ship as a distinct entity and liable for its acts without reference to its owners. When the contract was made it doubtless was intended by the parties thereto that the barge as an independent entity might involve liability on the part of the Assurance Company when the owners of said barge would in no wise be responsible. This being so, it was also doubtless contemplated by the parties that the only indemnity contracted for by the owners was in the capacity of owners of said barge and not as owners of some other ship."

The English decisions dealing with the running down clause in marine insurance policies reach the same conclusion. In Furness Withy & Co., Ltd. v. Duder, 1936 L.R., 2 K.B. 461, the court rejected the claim of a ship owner to be indemnified under the clause in a policy on a ship for damages paid by the owner for injuries to a tug which it had engaged under a contract to make good any damages to the tug arising out of the towing service. The tug was damaged solely by its own negligence during the towing operation. In denying the right of the shipowner to recover from the insurer of the ship the court said: (pp. 467–8) "* * * I think the clause means that where in consequence of a collision there arises a legal liability upon the shipowners to pay a sum which can properly be described as damages for a tort, then the underwriters will indemnify them. The expression 'become liable to pay * * * by way of damages' indicates to my mind, a liability which arises as a matter of tort, and not as a matter of contract."[3]

In Hall Bros. S/S Co. v. Young, 1939 L.R., 1 K.B. 748, the English Court of Appeals had a case involving the liability of an insurer under the running down clause where the insured vessel, without fault on its part, was in collision with a pilot boat which it had engaged and the shipowner was obliged under the French law to pay for the damages sustained by the pilot boat. In holding that the liability of the shipowner was not covered by the policy Sir Wilfrid Greene, M.R., said:

"It is to be noticed that in the last branch of the clause there occurs the phrase 'but when both vessels are to blame.' That phrase seems to me to throw light upon the construction of the earlier part of the clause and to confirm what I have been saying about it. The phrase, 'but when both vessels are to blame,' imports the idea that what the clause is dealing with is a case where the vessel insured is to blame, that is to say, has been guilty of some breach of duty (normally, the duty to take care), and the last part of the clause makes special provision for the case where the other vessel also is to blame." (p. 757) * * *

---

3. This decision is pertinent because it adopts the view that the liability of the insurer is related to the act of the vessel covered by the policy, although the restriction of coverage to liabilities from tort as distinguished from contract would hardly find favor in this country. See, Marine Transit Corp. v. Northwestern Fire & Marine Ins. Co., 2 Cir., 67 F.2d 544; Bee Line Transp. Co. v. Connecticut Fire Ins. Co., 2 Cir., 76 F.2d 759.

"Therefore, taking the matter of the construction of this clause, the conclusion to which I have come is that the payments 'by way of damages' to which it refers are payments the obligation to make which arises from a fault of some kind on the part of the ship insured." (p. 759)

In the same case, MacKinnon, L.J., considered the meaning of the words "in consequence thereof" and said: "It has been a well settled rule for over seventy years, in regard to the construction of marine insurance policies, that where, in an added clause in a policy, there are words like 'in consequence thereof,' you must, in dealing with causation, look at the proximate and not the remote cause. I say that was settled over seventy years ago; it was so in the case of Ionides v. Universal Marine Insurance Co. (1863) 14 C.B. (N.S.) 259, where the words were 'all consequences of hostilities.' So here, where you have the words 'in consequence thereof,' they mean 'and the assured shall as a result proximately caused by the collision be liable to pay.' This liability of the appellants was not proximately caused by the collision. Indeed it was not caused by the collision at all. This liability was caused by the French law, which created a liability on the ship to pay for any damage caused to the pilot boat by any cause, though, of course, 'any cause' included collision." (pp. 761–2)

It is true that the tug and tow were operating as a unit at the time of the collision in the instant case and that such a flotilla may be considered a single vessel for many purposes, including limitation of liability. Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663; Standard Dredging Co. v. Kristiansen, 2 Cir., 67 F.2d 548, but as to third persons the liability of tug and tow depend upon their individual wrongdoing, and in case of collision with a third ship, the value of the guilty vessel alone is the limit of the owner's liability. Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn Eastern Dist. Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130. The liabilities of tug and tow under such circumstances is well stated in Robinson on Admiralty, p.

679, as follows: "The liabilities of tug and tow to third persons depend upon their separate and individual faults. If by the tug's fault solely the tow is injured by impact with a third person's interest the tow cannot recover from the third party. But if a third party is injured by impact of the tow upon his interest the tow is not liable unless it was itself at fault. The fault of the tug is not imputed to the tow and, unlike the case of vessels in charge of pilots or charterers, no maritime liens on the tow, or its cargo, accrue in favor of the third person."

The judgment of the District Court is Affirmed.