## THE CAPT. JACK.

### (District Court, D. Connecticut. April 6, 1909.)

### No. 1,560.

1. SHIPPING (§ 205*)—LIMITATION OF LIABILITY—PERSONS ENTITLED TO BENEFIT OF LIMITATION.

Where a judgment was recovered in a state court against a corporation for the death of a person killed on a derrick scow owned by the defendant by the breaking of a part of the derrick, the court finding that the part was obviously defective on inspection, but that no inspection or repair was made, that the derrick was being used at the time in the raising of a sunken vessel under the personal direction of the defendant's president, who was on board, and, that the defendant was chargeable with negligence causing or contributing to the death, the corporation cannot maintain a petition for limitation of liability against such judgment on the ground that the injury was occasioned without its privity or knowledge, through the fault or negligence of the master of the scow.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 205.*

Limitation of owner's liability, see note to 45 C. C. A. 387.]

2. SHIPPING (§ 209*)—LIMITATION OF LIABILITY—CONDITIONS PRECEDENT.

Where a contractor for raising a sunken vessel employed in the work an outfit which it owned, consisting of a scow on which was mounted a derrick, and a tug to supply motive power, in order to maintain a petition for limitation of liability for the killing of a person by the breaking of a part of the derrick during the work, the contractor was required to surrender the entire outfit, including the tug.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 209.*]

In Admiralty. Petition for limitation of liability.
See, also, 162 Fed. 808.

C. S. Hamilton and C. A. Morse, for claimant.
Samuel Park, for petitioner.

PLATT, District Judge. The petitioner herein is the T. A. Scott Company, a corporation located at New London, Conn. Said company alleges: That on or about February 7, 1905, it was the owner of a derrick scow or lighter called the Capt. Jack, which, with its equipment, was used to raise sunken vessels and other work of like character. That on said day, while engaged in raising a sunken vessel in New Haven Harbor, one of the bolts which held the strap at the end of the boom broke, and the strap and bolts, in falling to the deck, struck Andrew J. Perkins, a marine engineer, who was standing on the deck of the lighter, and killed him. That said damage and injury was not caused by or through any fault or negligence on the part of said scow or lighter Capt. Jack or the petitioner, but was caused whol-

ly through the fault and negligence of the master and crew of said scow. That said damage and injury was done and occasioned without the privity or knowledge of the petitioner. That the administratrix of the estate of said Perkins brought an action against the petitioner in the superior court for New London county, and on June 19, 1906, obtained a judgment thereon for $5,000 damages and costs. That the amount of said judgment exceeds the value of the petitioner's interest in the Capt. Jack and her equipment, and her freight and voyage moneys, respectively, pending at the time of the disaster. That no other claim exists against her. The petitioner therefore offers up the Capt. Jack, her equipment and pending freight, and seeks the benefit of the limited liability act of Congress to be now found in sections 4283 to 4285 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2943, 2944), and the various statutes supplemental thereto and amendatory thereof.

The petition which is above outlined in its essential parts, was filed on October 28, 1907, and thereupon the usual proceedings in such cases followed. The lighter, with her equipment, which was found to include the hoisting apparatus, was surrendered, and with the aid of the commissioner was found by the court to have been worth in the condition in which she was after the accident, with pending freight, $3,625. The only claim presented was that of the administratrix of said Perkins, deceased, and the petition was heard on the merits at New Haven on March 15, and, by continuance, at Hartford on March 29, 1909.

Counsel for both petitioner and claimant have presented all the testimony which they deemed relevant, have been listened to with patience, and have filed briefs to their full satisfaction. The time at the court's disposal will not permit an exhaustive treatment, either of the facts or of the law which governs the facts, and it is hoped that the parties in interest will appreciate that, although this opinion may seem meager, the case itself has received long and careful examination.

The oral testimony presented in court is quite brief, and both parties depend largely upon the proceedings in the state court. Both claim that the state court judgment must be treated by this court as res adjudicata, but they differ diametrically and persistently upon the question of what has been decided by the state court.

The petitioner says that the state court has decided that Perkins was killed because of a defective strap on the boom of the hoisting apparatus on the Capt. Jack. To that extent he is willing to accept the judgment as res adjudicata. I trust that I am not putting it too strongly when I say that to that extent he courts it and welcomes it with open arms. With that kind of a judgment held up before the court, his argument proceeds smoothly, faultlessly, and logically to the final conclusion. Here is his line of reasoning, briefly stated:

The state court finds (he says) that the accident was caused directly by a defective strap on the boom of the derrick. The petitioner had placed an exceedingly competent man in charge of the Capt. Jack, and had kept him on that boat for over two years. To this competent man (Capt. Nixon) he delegated the duty of inspecting the Capt. Jack and keeping her in proper condition to carry out the work of

raising sunken vessels. He knew nothing about the defective strap, and had discharged his full duty under the law when he put such matters in the hands of such a competent man. It is too bad, we are sorry (I can hear him saying), but to encourage the investment of money in water craft it would never do to refuse us the benefits which Congress had in mind when they passed the limited liability statutes.

But, the claimant says, your president, Mr. Thomas Scott, Jr., was present in New Haven Harbor on the lighter and directing the work. That makes no difference (the petitioner replies); the state court has found that the defective strap was the cause of the death, and neither he nor I knew about the defect in the strap. We had not examined the appliances, and we had a right to rely upon the master of the Capt. Jack, who had the matter in charge. It is admitted that, if Mr. Scott knew, the corporation knew. It is insisted, however, as the case stands, that Mr. Scott neither knew, nor ought to have known, that the strap was defective. Ergo, the petitioner had no privity or knowledge of the cause of the accident.

That is the petitioner's case on the question of privity or knowledge. Before looking at the other side of the picture, let me say a word on the matter of the delegation of the duty of inspection to Capt. Nixon. The exaggerated grossness of his neglect in failing to condemn the bolt which broke and caused the damage, when he had it right before his eyes a short time before the accident, renders it incumbent upon the petitioner to clear its skirts in a most careful manner from the charge of having neglected its duty when it delegated the power of inspection to him and maintained about that subject an ominously rigid silence forever after. The claimant, as above suggested, looks at the situation from another angle, and consequently sees different things. She says that the state court has decided very much more than that the direct cause of the accident was a defective strap. She thinks that this court, in order to ascertain whether that is so or not, ought to go further than to examine the brief memorandum which the trial judge filed with the judgment.

It seems that later the petitioner here, who was defendant there, having visions of possible relief in the higher state court, demanded, as it had a right to do, a more comprehensive finding of facts from the trial judge. Such a finding is of record in the state court. It contains a more comprehensive statement of the facts upon which the trial judge based the order of judgment, and reaches nunc pro tunc back of the judgment. The claimant thinks that this court should venture to glance at that finding in order to learn what was actually decided in the state court. She thinks correctly, and for that reason claimant's Exhibit 1 is admitted.

It is quite possible to decide the case at bar without the aid of this exhibit, because important portions of the complaint in the state court were admitted to be true under the peculiar form of practice in vogue at that time, but the matter decided is much plainer after reading the finding of facts. We will find there a very different situation from the one relied upon by the petitioner, although, as has been suggested, it is not clear that the situation which he relies upon is supported by the

proofs he offers. The finding emphasizes a fact which the pleadings admitted, viz., that Thomas Scott, Jr., president of the defendant corporation, was in full charge of raising the sunken boat, and was giving all the necessary orders and directions for that purpose, and was watching the operation of the work. It is found that the boom in use on the derrick was bought secondhand about a year before the accident, and was not inspected; that after a few months' use one of the bolts on the leading band had broken and a new one was put in, but the other bolt, which was in very bad condition, was not inspected, although a very casual inspection would have revealed its weakness. It is found that the day was cold, and that the leading band and bolts were subjected to a severe strain, and that such use of them on such a day imposed upon Mr. Scott, the president, in charge of the work, the duty of requiring a careful inspection of the appliance just before the time of the accident, and that none was made. The conclusion is reached that the facts established by the evidence did not show that the defendant was not negligent, substantially as charged in the complaint, which is our Connecticut way of saying that the defendant was negligent, substantially as charged.

The defendant at the state trial took issue on the allegations of paragraphs 10, 11, 12, 13, and 17. Much of the claimed negligence is set forth in paragraph 17. It is there charged, among other things, that the defendant was negligent in so anchoring the lighter that the boom had to be used at right angles; that the becket end of the guy rope was fastened to the leading band, instead of to the guy band; that the power of the engine was greater than the appliances could stand; that a strain was allowed to come upon said leading band from both the standing part and the guy rope at the same time. These facts are found by the trial court to be substantially true, although not specifically mentioned in the finding. Paragraph 14 had been admitted, and it is therein alleged that after the defendant had raised the sunken boat a little from the bottom the chain around her slipped and caused a jerk of the boom, which put too great a strain on the leading band, and by force of the strain the band was caused to break and a piece to fall and hit the deceased, which blow caused his death.

We are now prepared to discover what was litigated in the state court and what was decided. There is much more in the case than the mere fact that there happened to be on the Capt. Jack a defective bolt on the leading band, which ought to have been found long before by the captain of the lighter, who was a capable man and ought to have found it. The petitioner itself was there in charge of the work, and the state court has found that the petitioner was negligent in the execution of that work, and by its negligence caused the death of Perkins. It is not necessary to decide that the petitioner's neglectful conduct was the sole inducing cause of the damage. It is enough, if what he did contributed essentially thereto; in other words, it is enough, if it is found that the defective strap would have been harmless if he had not done what he did do. How the petitioner can say now to this court, with a straight face, that it was without privity or knowledge of the cause of the accident, is beyond my comprehension. I am compelled

to find that he has not sustained that necessary allegation of his petition.

If it were necessary to the decision, I should also be compelled to find that the petitioner ought to have offered up the tug Harriet, as well as the lighter, in order to obtain the benefits of the limited liability act. When the petition was filed the idea was to surrender the Capt. Jack alone, without the hoisting apparatus for use in raising sunken vessels, which was movable and could be transferred from one lighter to another. At the hearing on value before the commissioner, however, he was constrained to submit to a valuation of the hoisting apparatus, but insisted that the tug was outside the issues. We valued what he gave up, but I could not see then, and cannot see now, why the logic which induced him to surrender the hoisting apparatus does not force him to surrender the tug. His argument is that he is only constrained by the limited liability act to surrender the offending thing. At first he considered the offending thing to be the scow Capt. Jack, which was made over from an old railroad car float, minus the derrick, engine, etc., used in hoisting. Later, it evidently struck him that, as Perkins was killed by a piece of the strap band which came off the boom of the derrick, it might be well enough to include the hoisting apparatus in that imaginary construction called the offending thing. Now it appears that the lighter and hoisting apparatus and tug were the component parts of a wrecking outfit which the petitioner used to raise the sunken Zouave in New Haven Harbor. The lighter had no propulsive power of her own, and so the outfit was necessarily the one stated. The Harriet did not bring the lighter over to New Haven, leave her at the proper anchorage, and then go about her own business. She stayed and helped out. She was fastened to the Capt. Jack, using her own engine to exhaust upon the sunken boat, and was, with the lighter, under the control and direction of the petitioner, taking a hand in at the work when the accident occurred. No case which I have read, and I believe I have absorbed them all, offers any state of facts or any line of reasoning upon such facts which would warrant the petitioner in expecting that upon the facts before this court he would be able to obtain the benefits which he seeks without first surrendering the entire wrecking outfit which was sent over from New London to raise the sunken vessel.

Therefore, upon both grounds above hastily discussed, the petition must be dismissed, with costs.