## THE CALEDONIA.

### In re STANDARD DREDGING CO. et al.

District Court, E. D. New York.
June 20, 1933.

Alexander, Ash & Jones, of New York City, for petitioner.

Carl R. Wittekind, of New York City (Jay Leo Rothschild and Purdy & Purdy, all of New York City, of counsel), for Julius Kristiansen.

BYERS, District Judge.

Hearing on Exceptions to Report of Special Commissioner appointed pursuant to Admiralty Rule 43 (28 USCA § 723), to take testimony and report his opinion to the Court, as to whether the dredge "Lake Fithian" and the barge "Caledonia" were one vessel in the legal sense, for the purposes of limitation; the question arose on a motion by the claimant, to require the petitioner to surrender the dredge as well as the barge, and the Court was unable to decide the motion on affidavits. The disposition of the Exceptions will coincide with the decision of the original motion.

The claimant was a member of the crew of the dredge, which was anchored off Sheepshead Bay in this District, on October 15, 1931, where certain dredging was being carried forward. On that night, he was ordered to go on board the barge and there affix one of the dredge's lanterns as a riding light.

In performing the task, he fell through a broken hatchway on the barge, and sustained severe injuries. He brought suit in the state court, whereupon the limitation was here filed, and the barge alone was surrendered.

The Special Commissioner has reported that there was in effect common ownership; that the barge had no crew, and that the vessels may be regarded as being under the direction of one master, but that, under the decisions, they were not co-operating in a common effort or movement at the time of claimant's injury, and hence cannot be regarded as one vessel for the purpose of the limitation proceeding.

The cases examined in the Report involve participation in movement or the exertion of power on the part of two vessels, followed by injury, and in such circumstances the question for decision was whether either or both vessels were doing the thing that caused or gave rise to the injury. The Columbia (C. C. A.) 73 F. 226; Thompson Towing & Wrecking Ass'n v. McGregor (C. C. A.) 207 F. 209; The Capt. Jack (D. C.) 169 F. 455; The W. G. Mason (C. C. A.) 142 F. 913; Van Eyken v. Erie R. Co. (D. C.) 117 F. 712. To these, there should be added The Anthracite (C. C. A.) 168 F. 693, in which The W. G. Mason, supra, is distinguished on the facts.

From these cases, the learned Special Commissioner concludes that participation in a joint enterprise requires that "both vessels were actively and physically, by their very movements, participating in the consummation of the end for which they were sent out by their owners."

He found that element lacking here, and so reported that the dredge and barge were not one vessel in the legal sense at the time of the claimant's injury.

A reading of the testimony forces the Court to reach a different conclusion.

To the rule as stated, there need be no dissent for present purposes, but it seems not to control these facts.

In a case where no movement is involved, there would seem to be no requirement for joint movement, in order to establish joint participation in a given enterprise.

This dredge was held in place by anchors and spuds, and operated 24 hours a day, in three 8-hour shifts. The material to be deposited on shore was cut away by a device carried on the dredge, and pumped through pipes, partly carried on pontoons and partly under water, to Cerritsen Beach. The pumps were on the dredge, to which the conduit pipes were connected.

The entire equipment was operated by fuel oil, carried to the dredge by the barge, which was made fast alongside for that purpose, with such frequency as the progress of the operations required.

The dredge carried tanks of 700 gallons capacity as operated, which were replenished, as stated, from the barge, which had tanks of about 1,000 gallons capacity; the barge was hauled to the dredge by one of the latter's attendant tugs, and then returned to her mooring about 1,000 feet away. When the barge's tanks were empty, she was hauled to Bayonne by the same tug, where oil was laden which had been purchased by the owner of the dredge, and then returned to her mooring until the Captain of the dredge needed more fuel; then the barge was hauled alongside and the deck-hands of the dredge coupled up her steam hose to the tanks on the barge; then a pump on the latter was connected by the engineers on the dredge, and they ran the pump in the fueling operation.

This process was conducted at least twice a week for the period beginning in August, 1931, and continued until the time of the accident.

The barge was not operated by an itinerant vendor of oil; it was in effect a fuel tender of the dredge, as two of the petitioner's witnesses somewhat reluctantly admitted, carrying oil which was the property of the owner of the dredge.

The safety of the barge at night was the concern of the Captain of the dredge, in the practical as well as the legal sense, for, if she had been run into by another craft and her cargo lost, or the barge sunk, the 24 hour per day operations of the dredge would have been delayed. In obedience to this realization, the crew of the dredge carried lighted lanterns to the barge each night and put them in place, in connection with affixing lanterns to the pontoons carrying the pipes to the shore. Thus the claimant was not engaged in a casual errand at the time of his accident, but in the performance of a routine duty regularly assigned under the discipline of the dredge. Complete dominion over the barge was exercised from the dredge, and from no other place.

The barge was placed at a mooring established by the dredge, at a sufficient distance to prevent danger from fire to the latter. The barge did not even have accommodations for a man to sleep on board.

The dredge employed the barge in the prosecution of the operation being carried forward; i. e., her safety and maintenance were a necessary element in the dredge's work, as much as the spuds or the anchors which held it in place, and, if negligence was involved (which can alone be determined at the trial), it had its origin in the dredge, and its effect on an appurtenance of the dredge.

For the reason then that the dredge was engaged in an undertaking which did not involve movement as in a collision case, it is not thought that the rule announced in The W. G. Mason, supra, controls the instant proceeding.

It is thought that the barge was an instrumentality—passive but essential—in the dredging operation as conducted.

The difference between the contribution to the enterprise made by the barge, and that made by the lighter in The Capt. Jack, supra, is one of degree, not principle. The same remark applies to Thompson Towing & Wrecking Ass'n v. McGregor, supra, and the language in the last paragraph of that opinion, on page 214 of 207 F., is thought to be apposite.

The Exceptions to the Report will therefore be sustained, and the motion to compel the surrender of the dredge will be granted.

The Court has been asked to pass upon the fee of the Special Commissioner. There seem to have been two fairly long hearings, at which four witnesses were examined, and 160 pages of testimony taken. In addition, there was a separate hearing for argument, and careful briefs were submitted, and the preparation of the Report must have required time and reflection. It is thought that $400.00 would be a reasonable fee under all the circumstances.

Settle order on notice.