## THE GEORGE W. PRATT.
### No. 333.

Circuit Court of Appeals, Second Circuit.

Argued March 11, 1935.

Decided April 15, 1935.

Single & Tyler, of New York City (Christopher E. Heckman and Wilbur H. Hecht, both of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for petitioner appellee.

Foley & Martin, of New York City, for appellee Dranuc Distributing Corporation.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

On April 5, 1930, the tank barge U. P. No. 109 sank in the Hudson river while in tow of the tug Pratt. In previous litigation it was found that the sinking was caused by the improper way in which the barge was made fast to and was towed by the tug. The decision was affirmed by this court without opinion. Newburgh Gas & Oil Co. v. Dranuc Distributing Corp., 56 F.(2d) 1084. Thereafter Cornell Steamboat Company, owner of the tug, filed its petition to limit liability and made parties Dranuc Distributing Corporation as owner of the barge, and Newburg Gas & Oil Company as charterer of the barge and owner of the cargo of oil which she carried. After trial an interlocutory decree was entered granting the petitioner the right to limit its liability to the value of its interest in the tug Pratt, which was fixed at $1,800. From this decree Newburg Gas & Oil Company has appealed.

The appellant first contends that to be entitled to limitation of liability the petitioner must surrender two other tugs in addition to the Pratt. This contention is based on the fact that the petitioner entered into a contract with the appellant to tow the barge from Newburgh to Kingston, and used three of its tugs in performing the agreement. The Cornell No. 41 picked up the barge at Newburgh and placed her in a flotilla; the tug Hercules was in charge of towing the flotilla up the river; when they approached Kingston, the helper tug Pratt took the barge out of the flotilla and proceeded with her toward the dock at which she was to be landed. It was during this maneuver that the barge filled and sank, due to the Pratt's negligence. It is argued that since the loss arose from negligence in performance of the towage contract, all vessels engaged in performing the contract must be surrendered. Particular reliance is placed upon the language of this court in Standard Dredging Co. v. Kristiansen, 67 F.(2d) 548, at page 550 (certiorari denied, 290 U. S. 704, 54 S. Ct. 372, 78 L. Ed. 605), where it was said that "the decisions in the lower courts are that to limit liability for breaches of duties, incidental to a contract, all vessels which take part in the undertaking must be surrendered." That was a case where a seaman employed on a dredge was injured upon a chartered barge which was used as a tender to supply oil to the dredge and was anchored about one thousand feet distant from it at the time of the accident. The barge was still intended to be used in serving the dredge as occasion demanded, and was therefore at the time of the accident a part of the flotilla engaged in the venture. We held that the physical separation was immaterial, and that "the owner must surrender all those vessels which share in the execution of the venture; collectively they are 'such vessel' within R. S. § 4283 (46 USCA § 183)."

Neither the actual decision nor the language of the Kristiansen Case can be given so broad a scope as to mean that all the vessels used successively in performing a contract are to be deemed collectively one vessel for purposes of surrender in limitation of liability. On the contrary, we think the rule is established that the vessels to be surrendered are those devoted to performance of the contract at the particular time when the fault which causes the loss is committed. This was the principle upon which Judge Brown decided The Bordentown, 40 F. 682 (D. C. S. D. N. Y.), saying at page 687: "Where all the tugs employed belong to the same owner, and are under one common direction, and are engaged in the service at the time when the fault is committed, they are in the same situation, as it seems to me, as a single vessel, as respects responsibility for the negligence of the common head." Hence he required the Bordentown and its helper tug Winnie to be surrendered, but not the tug Willie, "because, at the time when the real fault in the case was committed, viz., when going out into the bay, she was no part of the moving power, but was several miles distant, engaged in taking care of a separate detachment of the tow." The Bordentown was cited with apparent approval in the Kristiansen Case, and there is nothing in the latter opinion casting doubt upon the correctness of Judge Brown's decision as to the tug Willie. Ralli v. New York & T. S. S. Co., 154 F. 286 (C. C. A. 2), also contradicts the appellant's contention. There cotton shipped under through bills of lading from Galveston, Tex., was to be transshipped at New York, for transportation to Ghent, Belgium. During the lighterage, the lighter careened with consequent loss of some of the bales of cotton and damage to others. As both the lighter and the steamer on which the cotton arrived had the same owner, it was claimed that the pending freight from Galveston to New York must be surrendered

to obtain limitation of liability, but the court held it sufficient to surrender the lighter and the freight to be earned by her. That decision would be wrong, if the appellant's theory were correct. There is nothing in Sacramento Nav. Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, nor in the other cases relied upon by the appellant,* to indicate that the owner is required to surrender anything more than the vessels devoted as a unitary instrumentality to the undertaking at the time when the fault is committed—whether the fault be viewed as a breach of contract or as a tort. In the present case, the fault was a tort. Stevens v. The White City, 285 U. S. 195, 201, 52 S. Ct. 347, 76 L. Ed. 699.

 Applying the above principle to the facts at bar, it is apparent that no tug other than the Pratt was being used to perform the towage contract when the Pratt's negligence occurred. The Cornell No. 41 had completed her part of the service the day before. The Hercules had completed her part of it when the Pratt took the barge out of the main tow. The relation of both the Cornell No. 41 and the Hercules to the towage being performed when the negligence occurred, was like that of the tug Willie in The Bordentown, supra, or that of the steamer in Ralli v. New York & T. S. S. Co., supra. There is some contention that the negligence occurred in making fast the Pratt's lines while the barge was still in the flotilla in tow of the Hercules. But this is not so; the negligence was the Pratt's towing of the barge with an improper make-up of lines. This is made clear by Judge Campbell's opinion in the suit which established the tug's liability where he said that "the trouble arose after the steamtug George W. Pratt took the No. 109 out of the tow, and * * * was due to faults of the Pratt in her towage of the barge."

The appellant's second contention is that the petitioner did not sustain the burden of proving that the loss occurred without the privity or knowledge of the owner. The loss occurred because of "the improper way in which the barge was made fast to and towed by" the Pratt. The lines were so made fast that they raised the starboard side and lowered the port side of the barge when in forward motion, and to a greater degree when the tug's engines were in reverse. This caused water to enter the goose neck vent pipes of the barge. The Pratt's master testified that he made fast the lines in his customary manner. The appellant argues that this was a confession of habitual negligence and that no proof was offered to show that the officers of the petitioner had no knowledge of this negligent practice. There are two answers to this argument. As it was stipulated that the captain was competent, an inference that he was habitually negligent is not permissible. Secondly, his testimony that he made the lines up in his customary manner is not an admission of habitual negligence. It was only because of the particular conditions then existing that it was negligent to tow this barge with such a make-up of lines. The petitioner proved that the tug was seaworthy, that no officer of the corporation was on board, and (by stipulation) that the master was competent. This made a prima facie case for limitation. The Rambler, 290 F. 791 (C. C. A. 2). The appellant offered nothing to overcome it.

The decree is affirmed.

---

* The other cases relied upon are The Columbia, 73 F. 226 (C. C. A. 9); The Capt. Jack, 169 F. 455 (D. C. Conn.); Thompson T. & W. Ass'n v. McGregor, 207 F. 209 (C. C. A. 6); In re O'Donnell, 26 F.(2d) 334 (C. C. A. 2).