Christopher MURRAY, Plaintiff-
Appellant,

v.

NEW YORK CENTRAL RAILROAD
COMPANY, Defendant-Appellee.

No. 130, Docket 26125.

United States Court of Appeals
Second Circuit.

Argued Jan. 3, 1961.

Decided Feb. 20, 1961.

Bernard Chazen, of Baker, Garber & Chazen, Hoboken, N. J. (Nathan Baker, of counsel and Milton Garber, Hoboken, N. J., on the brief), for plaintiff-appellant.

J. H. Shapiro, Gerald E. Dwyer, New York City (C. Austin White and J. H. McDonald, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and SWAN and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

On April 26, 1955, the plaintiff sustained injuries when defendant's barge on which he was employed as floatman, or deckhand, was being moved by defendant's tug no. 20 from one slip to another in Weehawken, New Jersey. In the course of executing the maneuver which is commonly called "off the corner," the barge and tug came together so vio-

lently as to throw plaintiff into the Hudson River. Alleging that he was a resident of New Jersey and that defendant was a New York corporation, he brought suit in the court below on the civil side, and claimed a jury trial. His complaint alleged three causes of action, one under the Jones Act, a second based on allegations that the tug and barge were unseaworthy, and, third, a claim for cure and maintenance triable only in admiralty. See Bartholomew v. Universe Tankships, Inc., 2 Cir., 279 F.2d 911. Besides denying negligence and unseaworthiness, defendant pleaded as a partial defense to the Jones Act claim limitation of liability pursuant to 46 U.S.C.A. § 183(a).

The case was tried in January 1959. On defendant's motion the judge dismissed the second cause of action on the ground that there was no evidence touching the issue of unseaworthiness. The first cause of action based on the Jones Act was submitted to the jury under a charge to which no exception was taken. The jury returned a verdict of $75,000. On March 6, 1959, Judge Murphy having filed an opinion granting limitation and awarding maintenance, a partial judgment was entered in the sum of $2,800 for maintenance. Since the judge had sustained the defense of limitation of liability, D.C., 171 F.Supp. 80, he thereafter appointed a commissioner to take evidence and report as to the value of the two vessels involved. The commissioner found the value of tug no. 20 to be $10,000 and the value of the barge $6,000. His report was confirmed by the court and final judgment was entered November 23, 1959. The plaintiff duly appealed.[1]

The appeal raises no question as to the correctness of the award for maintenance. It does question dismissal of the cause of action based on allegations of unseaworthiness; but to this it will suffice to say that the decision is so clearly right as to deserve no discussion. The remaining issues involve the application of the Limitation of Liability Act to a personal injury action at law under the Jones Act, and the valuation of the two vessels involved.

A rational policy of long standing lies behind the Limitation Act, though it may be, as appellant has argued at great length, that the policy has become obsolete. But Congress has not repealed the Act, and there is certainly no sound basis for this court to strike it down as a denial of equal protection of the laws.

The appellant contends next that defendant's plea of limitation of liability was filed too late. The Railroad was notified of plaintiff's claim by a letter mailed on August 8, 1956, and did not file its plea until more than six months thereafter. Since the statute allows only six months for filing a petition for limitation of liability, 46 U.S.C.A. § 185, appellant claims that a plea can be filed no later. The fallacy of such a contention was pointed out long ago by Judge Goodrich in The Chickie, 3 Cir., 141 F.2d 80. This circuit adopted the rule of The Chickie in Deep Sea Tankers, Ltd. v. The Long Branch, 2 Cir., 258 F.2d 757. There is sound reason to differentiate between an original petition for limitation and a plea setting up § 183(a) of the statute in defense to a civil suit, since the plaintiff controls the date of bringing his suit. In the case at bar the complaint was filed on February 5, 1957, but was not served until February 8. The defendant's answer was served on February 26. The rule for which appellant contends disregards the desirability of one trial only, where all rights can be fairly decided in a single legal proceeding. See Moore-McCormack Lines v. McMahon, 2 Cir., 235 F.2d 142, at page 143; British Transport Comm. v. United States, 354 U.S. 129 at page 133, 77 S.Ct. 1103, 1 L.Ed.2d 1234. Thus, in the case at bar, under appellant's rule, the Railroad could not safely wait to see whether the plaintiff would actually bring an action on the claim of which he had given notice, and there would be two suits pending in the District

---

1. The defendant filed a cross-appeal, but this need not be considered in view of our disposition of the plaintiff's appeal.

Court, in each of which the facts to be proved as to the accident producing plaintiff's injuries would be the same.

The appellant's attempt to distinguish the rule of The Chickie because that was a suit in admiralty is wholly unconvincing. If limitation may be pleaded as a defense beyond the six month period, it would be unreasonable to make its availability turn on whether a plaintiff elects to bring suit on the admiralty side or the civil side of the court. Moreover, the plaintiff did invoke admiralty jurisdiction in suing for maintenance, and Judge Murphy as an admiralty judge determined the right to limitation of liability.

■■ With respect to the Jones Act claim the jury was instructed in a clear and unexceptionable charge that they might find the defendant guilty of negligence if the tug and barge were brought into contact with such force as to cause the plaintiff to be thrown into the river. The plaintiff had testified that this was exactly what happened. Capt. Eisenhower, called by plaintiff as an expert witness, who had himself often used the "off the corner method," testified that there was another method of shifting a barge, and if the shifting were done in that manner, there would be little or no contact between the barge and the tug. The charge allowed the jury to determine whether the defendant was negligent in not using the other method. The court also gave an appropriate charge on the issue of proximate cause. On the first theory of negligence, the excessive violence of the contact between tug and barge was a fault of navigation, which would not preclude limitation of liability. The second theory of negligence, if found to be the proximate cause of plaintiff's injuries, would preclude limitation, since it was conceded that the Supervisor of the defendant's marine operations knew that the tug boat captains did use the "off the corner" maneuver. As the jury returned a general verdict, it is argued that it is impossible to say which theory of negligence they accepted, and consequently limitation of liability must be denied.

In passing on the limitation issue, Judge Murphy found that the injury was caused by the excessively severe contact between tug and tow. This finding was in no way inconsistent with the jury's general verdict.

The division of functions between judge and jury in such a case is analogous to the situation presented in Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 and Ex parte Green, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212. See The Quarrington Court, 2 Cir., 102 F.2d 916, 918; see also Petition of Red Star Barge Line, 2 Cir., 160 F.2d 436, 438; George J. Waldie Towing Co. v. Ricca, 2 Cir., 227 F.2d 900, 901. In these cases, it is true, the civil action was brought in a state court rather than a federal district court and the shipowner filed a petition for limitation rather than a plea in the civil action. But these differences do not in our opinion make the cases inapplicable.

The appellant next contends that the court erred in limiting recovery to the value of tug no. 20 and the barge Jones Point. He argues that the court should have required the limitation to include:

1. "The value of Tug 32 on which Mr. Murray was regularly employed and for which tug 20 was a temporary substitute, as 32 was laid up for repairs on April 26, 1955."

2. "The value of the entire maritime unit of the defendant employed by it in its maritime operations in New York Harbor."

3. "The value of all defendant's tug boats and barges served by the 'master crew list' and 'Rosters' upon which plaintiff's name was carried as a seaman."

4. "The value of, at least, the barges in the area of the Pier where defendant's tug was 'shifting barges' or the vessels of the defendant which would be involved in the continuous activities of Tug 20 during its 8 hour tour with its crew."

■ No authority is adduced to support any of these extraordinary contentions, except In re United States Dredging Corporation, 2 Cir., 264 F.2d 339,

certiorari denied 360 U.S. 932, 79 S.Ct. 1452, 3 L.Ed.2d 1545. There six vessels had to be surrendered but the situation in that case bears no resemblance to the case at bar. We hold that only the tug and barge involved in the accident were required to be surrendered, and that the valuation of each of them as found by the commissioner, is adequately supported by the record. Accordingly the judgment is affirmed.