Petition of **WESTERN TRANSPORTATION COMPANY, an Oregon corporation, as owner of the covered Freight Barge No. 27 for Exoneration from and Limitation of Liability.**

Civ. No. 60-377.

United States District Court
D. Oregon.
May 25, 1961.

William F. White, White, Sutherland & White, Portland, Or., for petitioner.

Alex L. Parks, Dusenbery, Martin, Beatty & Parks, Portland, Or., for claimant Martin.

Victor E. Harr, Asst. U. S. Atty., Portland Or., for the Government.

EAST, District Judge.

The petitioner, Western Transportation Company, an Oregon corporation (Western), is the owner of the tug Peter W and Freight Barge No. 27 and has filed a petition for exoneration from and limitation of liability by reason of the misconduct of Peter W and Barge No. 27.

Western alleges that Barge No. 27 was taken in tow by Peter W at 10:20 a. m. on August 30, 1960, in company with another barge (No. 25), at the Waterway Terminals of the Port of Portland, Oregon. Peter W, with the two barges in tow, proceeded on her voyage up the Willamette River. Peter W dropped off Barge No. 27 at the lower end of the Oregon City locks at West Linn at 12:45 p. m. and went her way. Barge No. 27 was lifted by winches through the locks at the loading basin and tied to the Waterways Terminals docks at West Linn for discharge. While the cargo of Barge No. 27 was being discharged and also being stowed with a separate cargo by Western's employees, fire broke out at 5:45 p. m., whereupon an explosion occurred, spewing caustic cargo, referred to as sodium peroxide, shoreside, which settled on automobiles.

At the time of the explosion, Barge No. 27 was carrying 152 steel drums of sodium peroxide.

Petitioner has filed a sufficient ad interim stipulation for the value of Barge No. 27 and her cargo.

One William C. Martin (Martin), a claimant and assignee of owner's claims for automobile-paint damage aggregating in excess of $15,000, has filed exceptions to Western's petition. Martin claims Western's petition to be defective in that it has failed to surrender Peter W or to file an ad interim stipulation covering her value. Martin further complains that Western has failed to surrender its claims for indemnity in contribution against Waterway Terminals Company, a corporation, and Crown Zellerbach Corporation for concurrent negligence and breach of contract with respect to the loading, inspection and unloading of the sodium peroxide cargo of Barge No. 27. This question is now moot for the reason that Western has complied.

Martin prays that the petition for limitation be dismissed or, in the alternative, that Western be required to surrender Peter W or file an ad interim stipulation for her value.

In support of his exceptions to the petition, Martin alleges the following:

(1) That Barge No. 27 was towed to the site of the casualty by the tug Peter W; that the tug was owned and operated by Petitioner in conjunction with and as an integrated tow with Barge No. 27; that the personnel on board the Peter W were in charge of and in control of Barge No. 27; and

(2) That Western, Crown Zellerbach Corporation, and Waterway Terminals Company are engaged in operations as a wholly coordinated unit or venture and as part of a common scheme and under common control; that in the course of such operations employees of Crown Zellerbach Corporation and/or Waterway Terminals Company negligently participated in or negligently failed to participate in inspection of the cargo on board Barge No. 27 and the enforcement of safety precautions on Barge No. 27 or the dock at which it lay when the casualty occurred; and, that Petitioner has valid claims for indemnity or contribution against the Crown Zellerbach Corporation and Waterway Terminals Company.

Martin contends that the proximate cause of the fire on Barge No. 27, and of the resulting damage, necessarily was the negligence of the employees of Western.

## Discussion.

■ Western contends that Peter W was no part of any flotilla or "integrated tow" at the time of the accident. This is conceded to be the fact; however, this fact is not deemed to be dispositive of the question of whether surrender of the Peter W should be required. The time of *fault* is considered to be more important than the time of the accident, the latter time being somewhat fortuitous in a case of this kind. In The George W. Pratt, 2 Cir., 1935, 76 F.2d 902, 904, it was said that the owner is not "required to surrender anything more than the vessels devoted as a unitary instrumentality to

the undertaking at the time when the fault is committed—whether the fault be viewed as a breach of contract or as a tort." On the other hand, no case has been found in which it was held that the incidents of an integrated tow may attach where the liability becomes complete at a time when the vessels are no longer engaged in their common undertaking.

■■ Western further contends that even if Peter W is deemed to have been constructively a part of an integrated tow, she could only have been passive so far as fault is concerned. The leading case relied upon, in this connection, is Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn Term., 1919, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130. That was a case where a tug had lashed to its side a cargo-carrying float, and the tug caused the float to collide with the libelant's vessel. The court held that liability was properly limited to the value of the tug, the rationale being that the float was only a passive instrument in the hands of the tug. The oft-quoted language is as follows: "for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." See also, Deep Sea Tankers v. The Long Branch, 2 Cir., 1958, 258 F.2d 757. A similar case is The Erie Lighter 108, D.C.N.J.1918, 250 F. 490, 497. In that case the captain of a lighter sustained a fatal injury while his vessel was being attached by lines to a tug. The court there observed that "As the decedent's injuries were in no respect proximately due to any fault of the tug, or those in charge of her operation, but wholly to a structural defect in the lighter, I have no doubt that the petitioner's liability should be limited to the value of the latter vessel." However, neither the Liverpool case nor the Erie Lighter case meet the claimant's contention in the present case. Under the claimant's theory, the damage here was not caused wholly by some defect in Barge No. 27, but rather the tug Peter W was the vessel actively responsible for the harm. If the claimant's factual contention is

true, and the proximate cause of the damage was the breach (by the tug's crew) of some duty incidental to operation of the Peter W, then it would not be improper to require the tug's surrender. In Standard Dredging Co. v. Kristiansen, 2 Cir., 1933, 67 F.2d 548, 549, the court, after discussing Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn Term., supra, made this comment: "In any event we understand the decision as settling the law that in cases where the injury is to a third person, to whom the owner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong * * *." The question, the answer to which would be decisive of the issue under discussion, is "What constituted the offending vessel?" This question cannot be resolved as a matter of law, but will depend upon the proof in the case.

■ A third contention of Western is that the unit of limitation for a vessel such as Barge No. 27, continually engaged in trips of short duration on the river, is not the voyage, but rather the event, accident or disaster giving rise to the claim or group of claims. However that may be, the phrase "unit of limitation" has reference only to the grouping of claims and not to the vessel or vessels required to be surrendered in the limitation proceeding. Gilmore & Black, Law of Admiralty, p. 743 (1957); 3 Benedict on Admiralty, Sec. 493 (6th ed. 1940).

■ As a result of the fire of August 30, 1960, Barge No. 27 sustained damage to her hull, making the value of the vessel less at the time of her surrender. As to claims against third persons which Western might have for causing or contributing to this hull damage, Western concedes that they should be surrendered. The reason claims against third persons for causing hull damage need be surrendered is that the Limitation Act (46 U.S.C.A. § 183) requires the owner to surrender "the interest of such owner in such vessel." A right of action for such damage properly belongs in the limitation fund to make the fund complete. The claim is "representative" of the vessel. Petition of Navigazione Libera Triestina, D.C.E.D.N.Y.1929, 34 F.2d 150. No case has been found by or furnished to this Court which suggests that the owner of the vessel should be required to surrender a claim for indemnity other than claims which go to make whole the vessel and freight surrendered. It is this Court's conclusion that such is not the law. By way of analogy, it is worthy of note that even the proceeds of insurance carried by the owner on the vessel are not a component of his "interest" which must be surrendered. The City of Norwich, 1886, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134; Gilmore & Black, The Law of Admiralty, p. 712 (1957).

Conclusions.

■ (1) The minimum requirement for holding that there was an integrated tow is a finding that Peter W and Barge No. 27 were acting as a unit at the time of fault. Since the barge was unmanned, the two vessels could have been acting as a unitary instrumentality *at the time of fault* only if the fault was attributable to those charged with operating the tug. If the fault consisted in the breach of a duty incidental to the operation of the tug, then Peter W's surrender would be required. Since the tug's value alone apparently exceeds the aggregate amount of pending claims, there would be no reason to require the surrender of the barge and its tug under the theory of an integrated tow, and there is no necessity for deciding upon the applicability of that theory.

■ (2) Whether Peter W was a contributing factor to the fire and resulting damage has been put in issue by the claimant Martin's exceptions and exceptive allegations. Therefore, the petition will be dismissed unless Western surrenders the tug Peter W or, in lieu thereof, files an ad interim stipulation of value of said tug.

(3) A time will be set for hearing evidence on the issue of liability. The Court will then be in a position to determine whether Peter W should be included

in the limitation fund. The rendering of a decision on the merits of the petition for exoneration from or limitation of liability will be reserved, as will the determination of the extent of damage sustained by the respective claimants.

Proctor for Martin is requested to submit appropriate order.