**STEUART INVESTMENT COMPANY and Steuart Petroleum Company, Bodies Corporate,**

v.

**BAUER DREDGING CONSTRUCTION CO., Inc., a body corporate, and TUG ADOLPH MALCHAR, her engines, apparel, tackle and furniture, and Barge FUEL BARGE #640, her apparel, tackle and furniture.**

Civ. A. No. 70-700-N.

United States District Court, D. Maryland.

March 12, 1971.

908

W. B. Ewers, Baltimore, Md., for plaintiffs.

Alva P. Weaver, III, Baltimore, Md., for defendants.

NORTHROP, Chief Judge.

This is a case under Admiralty and Maritime jurisdiction concerning the Bauer Dredging Construction Co., Inc., a Texas corporation, and the Steuart Petroleum Company and Steuart Investment Company, both Delaware corporations. Plaintiffs have moved to strike an affirmative defense raising the applicability of 46 U.S.C. §§ 183–189 limiting an owner's liability in a ship collision case to the value of the vessel involved.

The facts are not in dispute. Briefly stated they are as follows: The vessel "Fuel Barge #640" while under the tow and command of the tug "Adolph Malchar", tied up to the Piney Point Pier at Piney Point, St. Mary's County, Maryland, to purchase fuel oil from the plaintiff, Steuart Petroleum Company. Both vessels were owned by the defendant. The pier was owned by the plaintiff, Steuart Investment Company but was leased to the plaintiff, Steuart Petroleum Company, a wholly owned subsidi-

ary. "Fuel Barge #640" finished loading its cargo sometime during the evening of January 20, 1970. The barge departed shortly after the loading under the tow of the "Adolph Malchar" to deliver the fuel oil to defendant's dredge located near Piney Point. While enroute a storm erupted forcing the barge and tug to return to the pier and dock. In the early morning hours of January 21, 1970, the fuel barge collided with the pier causing substantial damage. Plaintiffs allege the accident was caused by the unseaworthiness, negligence, fault and carelessness of the "Adolph Malchar" and the "Fuel Barge #640" and those in charge of them. Defendant denies these allegations and asserts that the casualty complained of was the result of an "Act of God" which forced the barge to break her moorings, parting her lines and thus damaging the pier.

Plaintiffs contend damage to the pier amounted to One hundred and twenty-five thousand ($125,000) Dollars, which figure the defendant disputes. Defendant by way of affirmative defense petitions this court to limit its liability to the value of the barge, reportedly $25,000, and at most, the additional value of the tug, reportedly $20,000. In addition, the value of the fuel on board was alleged to be $5,750. Plaintiffs contend the defendant cannot avail itself of this defense and urge this court to strike, alleging the existence of a personal contract between the defendant and plaintiffs. In the alternative, plaintiffs seek the inclusion of the additional value of both the tug and dredge in the petition for limitations.

■ At the outset, a party may move to strike under Rule 12(f) any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike, however, is not favored and will be denied unless the allegations attacked have no possible relation to the controversy and may prejudice the other party. Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819 (6th Cir. 1953); Jones v. Thunderbird Transp. Co., 178 F.Supp. 9 (D.Kan.1959); Thompson v. United Artists Theatre Circuit, Inc., 43 F.R.D. 197 (S.D.N.Y.1967). *See generally,* 1A Barron & Holtzoff §§ 366–369.

Under 46 U.S.C. § 183(a), the owner of a vessel may limit his liability

\* \* \* for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, \* \* \* [so that such liability shall not] exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

Plaintiffs initially contend that the limitation statute is inapplicable since there was a personal contract between the defendant and plaintiff, Steuart Petroleum Company. This contract was to supply fuel oil to the Bauer Dredging Construction Co., Inc. for use on the dredge and all attendant plants. Defendant denies the existence of a contract, but admits that it purchased fuel oil from the said plaintiff and that the financial arrangements for this purchase involved a billing rather than a cash transaction.

■ It has long been held that a defendant cannot take advantage of the limitation act where the liability rests on his personal contract. Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); Capitol Transp. Co. v. Cambria Steel Co., 249 U.S. 334, 39 S.Ct. 292, 63 L.Ed. 631 (1919); Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918); Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L.Ed. 770 (1918). As stated by Chief Justice Hughes, "[f]or his own fault, neglect, and contracts the owner remains liable." American Car & Foundry Co. v. Brassert, 289 U.S. 261, 264, 53 S.Ct. 618, 619, 77 L.Ed. 1162 (1933).

These decisions are in keeping with the tenor of the Act since the purpose in its enactment was to limit the liability which the law imputes to a shipowner

by reason of his relation to the ship, her master and crew, and not that liability which he voluntarily assumes by express contract. Petition of Hutchinson, 28 F. Supp. 519 (E.D.N.Y.1938). These cases involved personal contracts for the carriage of goods where a warranty, either expressly or impliedly, was given that the vessel was seaworthy. *Coryell, supra;* Cullen Fuel Co. v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189 (1933); *Capitol Transp. Co., supra; Pendleton, supra.*

The facts in this case are different. The question presented before this court is whether an owner can take advantage of the limitation statute when, after the purchase and loading of cargo on board a vessel, and after the vessel has left the dock embarking on its voyage, it subsequently is forced to return whereupon it strikes the dock causing considerable damage. Plaintiffs allege that since the defendant purchased fuel oil from them on credit, rather than payment at the time of purchase, a personal contract was formed ruling the limitation act inapplicable. This court feels that plaintiffs' reading of this exception is too broad. If this were so, a premium would be placed upon a purchase by cash rather than credit resulting in liability because of form, rather than substance.

As stated above, those courts finding a bar to the limitation statute have found an owner's implied or expressed warranty of seaworthiness. The courts have held that the injured plaintiff should not be precluded from recovering the entire amount of his loss where such a warranty of seaworthiness was given. The statute was not enacted to cover the owner's knowing and voluntary acts. Through no such reading of the facts in this case, however, can this court find such a warranty. The personal contract, if there was one, was solely for the selling of fuel oil to the defendant.

Plaintiffs rely upon the fact that defendant was billed for the oil delivered rather than paying for such oil through a cash transaction. Assuming for the sake of argument that a contract exists, it is only an independent sales contract, with each purchase of fuel oil making up a new contract. There was no obligation on the part of defendant to purchase any oil from the plaintiffs. The only obligation undertaken was for the payment of each purchase at a later date. No warranty of seaworthiness was given, nor would one ordinarily be implied. This court feels that merely because the defendant purchased its cargo from the plaintiff, Steuart Petroleum Company, and through a fortuitous circumstance the defendant's vessel damaged the plaintiffs' pier, the limitation of liability statute should not be barred. Merely because the vessel purchased cargo at the pier is not nexus enough to warrant ruling the statute inapplicable.

Plaintiffs also contend that if the limitation statute should apply, then the tug, barge and dredge should all be surrendered to this court or a sum deposited equal to the amount or value of these vessels, as required by 46 U.S.C. § 185.

The question of what constitutes a vessel has plagued admiralty courts for years. It has arisen in many and varied factual backgrounds with the underlying rationale derived from each opinion always being that each case must be decided on its own facts. Courts have tried to categorize their factual situations as a "consensual situation" or a "pure tort situation" in concluding whether the offending vessel is a single one or a unitary aggregate of two or more. *See* Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919). Quoting from In re Midland Enterprises, Inc., 296 F.Supp. 1356 (S.D.Ohio 1968):

> In its simplest form it is stated that, in a pure tort situation—i.e. one in which there is no contractual relationship between the offender and the person or persons injured—then, the "offending vessel" is the *one* which really caused the damage (Liverpool). On the other hand where there is a

contractual relationship the search need not be reduced to one but only to those two or more actually engaged in carrying out the contract. For example (of the latter situation) A contracts with B to dredge B's harbor. A dedicates to the performance a dredge and a tug and a barge and while all three are in the harbor at work, the tug knocks down B's dock or sinks B's vessel; in such a situation the socalled "flotilla" rule is invoked and to limit A must surrender all three of his ships as the "vessel". They are joined into one, so say the books, by "consensuality". *Id.* at 1360–1361.

■ In determining whether a "consensual situation" exists or whether the "pure tort situation" exists, courts first look to see whether the breach of duty was incidental to a contract. Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5th Cir. 1967). If a contract exists between the injured party and the party at fault, and at the time of the injury more than one vessel was engaged in the contractual enterprise, all being devoted to a single venture under a common command, then for purposes of the limitation act all these vessels so engaged must be surrendered, regardless whether they were active participants in the direct injury. But the vessels to be surrendered must be devoted to performance of the contract at the particular time when the fault which caused the loss was committed. The George W. Pratt, 76 F.2d 902 (2d Cir. 1935). Vessels too remote in space or time do not have to be surrendered. *See* Murray v. New York Cent. R.R. Co., 287 F.2d 152 (2d Cir. 1961).

■ The cases relying on the "consensual situation" have involved the performance of a service or duty by the party at fault to or for the injured party. The injured party having entered a contractual relationship with the faulting party either for the transportation of himself or his goods, Sacramento Nav. Co. v. Salz, *supra*; The Columbia, 73 F. 226 (9th Cir. 1896); The Big Chief, 75 F.Supp. 496 (E.D.Mo.1948); for the construction of off-shore well equipment, *Brown & Root, supra*; for employment, Standard Dredging Co. v. Kristiansen, 67 F.2d 548 (2d Cir. 1933); or for a dredging operation, United States Dredging Corp. v. Krohmer, 264 F.2d 339 (2d Cir. 1959). In these cases there was an obligation on the part of the faulting party to the injured party other than a general duty of care. To give an expansive reading to these cases would defeat the intent of the act. As stated before, the purpose of the statute entitling a vessel owner to a limitation of liability is to encourage and protect maritime commerce by relieving the shipowner from consequences of marine accidents and disasters not due to his personal knowledge, neglect or default. *See* The Maine, 28 F.Supp. 578 (D.Md.), aff'd sub nom. Standard Wholesale Phosphate & Acid Works v. Travelers Ins. Co., 107 F.2d 373 (4th Cir. 1939).

The contract, if there was one, was for the purchase and payment of the individual orders. No other obligation could be implied that was owed to plaintiffs by defendant. Defendant denies a contractual relationship which in any way relates to the damage incurred or the accident involved. Defendant admits that it purchased oil from plaintiff, Steuart Petroleum Company and that the financial arrangements for this purchase involved a billing rather than a cash transaction. Otherwise, there was no contractual arrangement between the parties. The casualty which is the subject of this suit was in no way involved with the purchase of oil or the fueling of the barge.

■ For purposes of argument, even if it was found that the breach of duty was incidental to a contract, the injury and fault were too remote to require the surrender of the dredge. "[T]he rule is established that the vessels to be surrendered are those devoted to performance of the contract at the particular time when the fault which causes the loss is

committed." The George W. Pratt, 76 F.2d 902, 903 (2d Cir. 1935). In that case, a tank barge sank while in the tow of the tug Pratt. It was shown at trial that the accident occurred as a result of the Pratt's negligence. The appellant sought to have the entire flotilla surrendered unto the court since the barge had been a part of it while being towed up the river. The court ruled otherwise, holding that no other tug was being used to perform the towage contract when the Pratt's negligence occurred. "There is nothing in Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663, nor in the other cases relied upon by the appellant, to indicate that the owner is required to surrender anything more than the vessels devoted as a unitary instrumentality to the undertaking at the time when the fault is committed—whether the fault be viewed as a breach of contract or as a tort." *Id.* at 904. At most, the damage was due to the fault of the tug "Adolph Malchar" and/or the barge "Fuel Barge #640." The dredge was in no way connected with the fault.

This case should therefore be decided on the basis of those decisions where the injury is to a third person, to whom the owner owes no duty based upon consent. In In re Midland Enterprises, Inc., 296 F.Supp. 1356 (S.D. Ohio 1968), the towboat "Orco" was pushing her tow of fourteen barges up the Ohio River. The "Orco" received a distress signal from her sister vessel "Tibolt". The "Orco" responded by tying off her tow so that she could proceed to the Tibolt's assistance. The barges came unfastened and floated downstream, some colliding with the Markland Dam. Eight barges sank. The petitioners tried to limit liability only to the sunken vessels. The court in a thorough analysis of the law in this area held that the other six barges did not have to be surrendered but only the sunken barges and the towboat "Orco." Since there was no contractual duty with the injured party, only the vessels directly causing injury had to be surrendered. They were the "offending vessels."

In a pure tort situation, only the offending vessel, which is the one causing the injury, will be surrendered unto the court. Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919); *In re Midland Enterprises, Inc., supra;* Murray v. New York Cent. R.R. Co., 287 F.2d 152 (2d Cir. 1961); Harbor Towing Corp. v. Atlantic Mut. Ins. Co., 189 F.2d 409 (4th Cir. 1951). *Liverpool* is the landmark decision holding only the offending vessel liable. There, a tug with a carfloat loaded with railroad cars lashed to its portside and a disabled tug on its starboard side was proceeding up the East River. A steamship was damaged while it was moored at a pier in Brooklyn when the carfloat collided with it. All three vessels were under common ownership. The sole question before the Supreme Court was "whether the value of the whole flotilla should not have been included in the (limitation) decree." The Court held that only the value of the tug was required by law to be included, because the carfloat, although it was the vessel which collided with the steamship, was a "passive instrument in the hands of" the tug, and "for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." The Court ruled that the words "any vessel" in the Act meant the offending vessel and not others attached to it, even though all were in common ownership and engaged in a common venture.

This doctrine was restated in Deep Sea Tankers, Ltd. v. The Long Branch, 258 F.2d 757 (2d Cir. 1958). There two tugs, each with a flotilla, caused the grounding of a tanker owned by the plaintiff by crowding and interfering with its navigation. The court held that only the two tugs could be held liable for their tows were merely "passive instruments of navigation. They had no motive power of their own." *Id.* at 773.

Both the *Liverpool* and *Deep Sea Tankers* cases limited liability to the tugs as the offending vessel, and exonerated the barges because they were passive instruments. The direct cause of the damage and liability in each instance was the action of the tugs. They were the moving components responsible for the injury. But a tow is not automatically immune from liability. A tow may be held responsible when it is shown that it was at fault in addition to the tug being negligent. Petition of Lake Tankers Corp., 1955 A.M.C. 55 (S.D.N. Y.); The Bowling Green, 11 F.Supp. 109 (E.D.N.Y.1935), aff'd sub nom. Czarnikow Rionda Co. v. Ellerman & Bucknall S.S. Co., 81 F.2d 1017 (2d Cir. 1936).

Contrary to the cases holding the tug exclusively liable because it was the "offending vessel," the damage to the pier in this case was not caused solely by the independent act of the tug. The tug did not push the barge into the pier. Both the tug and barge were forced to return to the pier and dock because of the weather conditions. It was the independent act of the barge breaking its mooring that resulted in damage to the pier. This case is not unlike the facts in *In re Midland Enterprises, Inc., supra.* The tow was not therefore a "passive instrument."

While the damage appears to have been caused solely by the contact of the barge with the pier, at the time of the collision the barge was under the tow and command of the tug and for purposes of the limitation statute no distinction should be drawn between them. As in *In re Midland Enterprises, Inc., supra,* they should be treated together as the "offending vessel." The tug is responsible for her own negligent actions whether the result be inflicted by her bow or by the side of her tow. Both the tug "Adolph Malchar" and the barge "Fuel Barge #640" are therefore within the term "vessel" as used in 46 U.S.C. §§ 183, 185 as applied to the facts as we must take them at this stage.

This court will therefore deny the motion to strike and will allow plaintiffs thirty (30) days in which to stipulate or contest defendant's valuation of the tug "Adolph Malchar", the barge "Fuel Barge #640" and the fuel on board. If a final determination of the value of the tug, barge and fuel on board should exceed the One hundred thousand ($100,-000) Dollars bond posted by defendant, then this court shall order the deposit of such additional value.